*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 09a0216p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,
                    *Plaintiff-Appellee,*

          *v.*                                                 Nos. 05-2598; 06-2505

MCMAINE ALLEN O'GEORGIA (05-2598);
a/k/a MARK ARHEBAMEN (06-2505),
                    *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
Nos. 99-80353; 02-80761—Gerald E. Rosen, Chief District Judge;
Lawrence P. Zatkoff, District Judge.

Submitted: March 13, 2009

Decided and Filed: June 24, 2009

Before: MARTIN and GILMAN, Circuit Judges; ZOUHARY, District Judge.[*]

_____

## COUNSEL

**ON BRIEF:** Martin J. Beres, LAW OFFICES OF MARTIN J. BERES, Clinton Township, Michigan, for Appellants. Alan Hechtkopf, Elissa Hart-Mahan, John Hinton III, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. McMaine Allen O'Georgia, Mark Arhebamen, Rochester, Minnesota, *pro se*.

          GILMAN, J., delivered the opinion of the court, in which MARTIN, J., joined. ZOUHARY, D. J. (pp. 23-38), delivered a separate opinion dissenting in part and concurring in part.

_____

[*]The Honorable Jack Zouhary, United States District Judge for the Northern District of Ohio, sitting by designation.

_____

**OPINION**

_____

RONALD LEE GILMAN, Circuit Judge.   Mark Arhebamen, also known as McMaine Allen O'Georgia, pled guilty in 2001 to one count of aiding and assisting in the preparation of a false federal income tax return.  He received a sentence of 21 months of imprisonment plus one year of supervised release. This court affirmed his conviction and sentence, but the Supreme Court remanded the case in 2005 for resentencing in light of *United States v. Booker*, 543 U.S. 220 (2005). The district court reimposed the same sentence.

While the appeal of his conviction and sentence was pending, Arhebamen was prosecuted separately for conduct that occurred during the false-tax-return proceedings. The new charges were for failure to appear at sentencing, making false claims of United States citizenship, corruptly endeavoring to obstruct justice by lying to the Probation Office, and making false statements to judicial officials.  Arhebamen was tried before a jury in 2003 on these new charges and was convicted on all counts.  After applying six different upward departures under the United States Sentencing Guidelines, the district court sentenced Arhebamen to 152 months of imprisonment and to four years of supervised release.  This court affirmed Arhebamen's conviction, but remanded for resentencing pursuant to *Booker*.  The district court again imposed the 152-month sentence and the four-year term of supervised release.

Arhebamen now appeals both sentences.  For the reasons set forth below, we **VACATE** the sentences and **REMAND** the cases to the district court for resentencing consistent with this opinion.

**I.   BACKGROUND**

These appeals have each come before this court once before, and our summary of the relevant factual and procedural background is largely drawn from *United States v. Arhebamen*, 197 F. App'x 461 (6th Cir. 2006).  Arhebamen came to the United States

from Nigeria in 1977 on a visitor's visa and has never left.  He obtained a Social Security number later that year and applied for, but never received, permanent resident status.  In 1979, he obtained a second Social Security number, this time claiming to be a United States citizen named McMaine Allen O'Georgia.  Arhebamen used this alias for more than twenty years.

In 1999, Arhebamen was indicted in the district court under the O'Georgia alias on 22 counts of aiding and assisting in the preparation of false federal income tax returns, in violation of 26 U.S.C. § 7206.  He pled guilty to one of those tax-fraud counts before District Judge Gerald E. Rosen in February 2001.  During the plea proceeding, Arhebamen represented that he was a citizen of the United States.  Judge Rosen released him on bond pending sentencing.

Arhebamen visited a physician in June 2001 and reported that he suffered auditory and visual hallucinations.  The doctor made a provisional diagnosis of paranoid schizophrenia and prescribed medication.  Arhebamen secured a one-month extension of his sentencing date as a result of the doctor's statements that he had entered her care and that she hoped to stabilize his condition before he returned to court.  During this extension period, Arhebamen moved from Michigan to Arizona in violation of his conditions of release.  Arhebamen saw a second physician in Arizona, who also recommended that his sentencing be postponed.  After the district court rejected this second request, Arhebamen failed to appear for his scheduled sentencing before Judge Rosen in July 2001.

Arhebamen was arrested soon thereafter and returned to Michigan, where Judge Rosen sentenced him to 21 months of imprisonment and one year of supervised release on the plea-based tax-fraud conviction.  The conviction and sentence were affirmed on appeal, *United States v. O'Georgia*, 80 F. App'x 439 (6th Cir. 2003), but the Supreme Court later remanded the case for resentencing in light of *Booker*, 543 U.S. at 245-46 (holding that the Sentencing Guidelines are now advisory).  Although by that point Arhebamen had long since completed his 21 months of imprisonment, Judge Rosen reimposed the same sentence plus the one year of supervised release in November 2005.

Arhebamen, who remains in prison due to his conviction on the second case described below, now appeals that decision.

While the tax-fraud appeal and resentencing were pending, Arhebamen was indicted anew for conduct that occurred during the tax-fraud proceedings. The charges were for failure to appear at sentencing, in violation of 18 U.S.C. § 3146(a)(1); making false claims of United States citizenship, in violation of 18 U.S.C. § 911; corruptly endeavoring to obstruct justice by lying to the Probation Office, in violation of 18 U.S.C. § 1503; and two counts of making false statements to judicial officials, in violation of 18 U.S.C. § 1001. United States District Judge Lawrence P. Zatkoff presided over the second case.

Arhebamen filed various pro se pretrial motions that sought, among other things, the recusal of Judge Zatkoff, a change of venue due to alleged negative publicity, and the exclusion of several of Arhebamen's state convictions from evidence. Judge Zatkoff denied all of these motions, and this court dismissed each of Arhebamen's ten interlocutory appeals from those rulings. This court has also denied at least five other appeals by Arhebamen that involve this second case, including duplicate appeals and a habeas corpus petition.

In response to Arhebamen's notice that he planned to offer an insanity defense at trial, Judge Zatkoff ordered him to submit to a mental evaluation. After considering Arhebamen's interlocutory appeal on whether the mental evaluation should be ordered, this court affirmed the district court's order. *United States v. Arhebamen*, 79 F. App'x 104, 105 (6th Cir. 2003). The court-appointed physician concluded, "based on the marked discrepancies between his claimed distress and the observations of his ability to function, his atypical lack of cooperation with psychological testing, his exaggerated psychological symptoms, and his lengthy history of general fabrication," that Arhebamen was likely fabricating his complaints. No diagnosis was offered. Following a hearing at which the court-appointed physician testified about her observations, Judge Zatkoff found that Arhebamen was competent to stand trial. Arhebamen then proceeded to trial pro se. The jury returned a verdict of guilty on all counts.

Arhebamen was sentenced in April 2004. The district court used the 2000 version of the Sentencing Guidelines to determine that Arhebamen's initial offense level was 19 and his criminal history category was V. This led to a Guidelines range of 57 to 71 months of imprisonment. But the district court increased Arhebamen's total offense level to 28 after adding two levels for obstruction of justice, two levels for disrupting the sentencing proceedings in his tax-fraud case, two levels for moving to Arizona, one level for extent of planning, and two levels for concealing his false claim to United States citizenship. In addition, the court increased Arhebamen's criminal history category from V to VI after finding that category V underrepresented the seriousness of his prior criminal record. The court thus concluded that Arhebamen was subject to a Guidelines range of 140 to 175 months of imprisonment, and sentenced him to 152 months.

Arhebamen appealed. After affirming Arhebamen's convictions, this court remanded the case for reconsideration of the sentence in light of *Booker*. *Arhebamen*, 197 F. App'x at 468. Judge Zatkoff, incorporating his prior sentencing memorandum by way of explanation, reimposed the same 152-month sentence and accompanying four-year period of supervised release. Arhebamen again appeals. He argues both that the district court abused its discretion in departing upward and that the resulting sentence is substantively unreasonable.

## II.    ANALYSIS

### A.    Standard of review

A district court's sentencing determination is reviewed "under a deferential abuse-of-discretion standard" for reasonableness, which has both a procedural and a substantive component. *Gall v. United States*, 128 S. Ct. 586, 591 (2007). We must first ascertain whether the district court committed a procedural error. *Id.* at 597; *United States v. Webb*, 403 F.3d 373, 383 (6th Cir. 2005). A district court necessarily abuses its sentencing discretion if it

> commit[s][a] significant procedural error, such as failing to calculate (or
> improperly calculating) the Guidelines range, treating the Guidelines as
> mandatory, failing to consider the § 3553(a) factors, selecting a sentence

> based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range."

*Gall*, 128 S. Ct. at 597.

Our review of a district court's decision to depart upward from the now-advisory Guidelines employs the same "standards we use to judge the procedural and substantive reasonableness of a variance from any [g]uidelines range." *United States v. Vowell*, 516 F.3d 503, 510 (6th Cir. 2008) (internal quotation marks omitted) (alterations in original). *See generally Irizarry v. United States*, 128 S. Ct. 2198, 2201-03 (2008) (clarifying the distinction between a departure—"a term of art under the Guidelines [that] refers only to non-Guidelines sentences imposed under the framework set out in the Guidelines"—and a § 3553-supported variance). But even if we determine that the district court committed a procedural error by utilizing an inapplicable departure provision, a remand is unnecessary if the "error was harmless—i.e.[,] any such error 'did not affect the district court's selection of the sentence imposed.'" *United States v. Hazelwood*, 398 F.3d 792, 801 (6th Cir. 2005) (quoting *Williams v. United States*, 503 U.S. 193, 203 (1992)). In other words, the erroneous application of a departure provision is harmless where the district court independently supports its choice of a sentence by a proper use of the § 3553(a) factors. *See United States v. Erpenbeck*, 532 F.3d 423, 441 (6th Cir. 2008) (affirming a sentence despite an erroneous departure pursuant to U.S.S.G. § 5K2.3 "because the sentence was sufficiently justified based upon the 18 U.S.C. § 3553(a) factors alone.").

If a district court's sentencing decision is procedurally sound, we then proceed to "consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard[,] . . . tak[ing] into account the totality of the circumstances, including the extent of any variance from the Guidelines range." *Id.* (alterations in original). For sentences within the Guidelines range, we apply a rebuttable presumption of substantive reasonableness. *Id.*; *Rita v. United States*, 127 S. Ct. 2456, 2462 (2007); *United States v. Williams*, 436 F.3d 706, 708 (6th Cir. 2006). No "presumption of

*un*reasonableness," however, applies to sentences outside of the Guidelines range. *Gall*, 128 S. Ct. at 597 (emphasis added).

**B.      Arhebamen's 21-month tax-fraud sentence**

Arhebamen had completed his 21-month sentence based on his guilty plea to tax fraud long before he was resentenced to that same term in 2005. The corresponding one-year term of supervised release is still pending, however, because Arhebamen is currently serving the 152-month sentence on his second conviction. Only the one-year term of supervised release saves his appeal in the first case from mootness. *See United States v. Maken*, 510 F.3d 654, 656 n.3 (6th Cir. 2007) (noting that even if the relevant term of incarceration has been served, an appeal of a sentence "is not moot so long as the appeal potentially implicates the length of the . . . supervised release term." (internal quotation marks omitted)); *United States v. Lewis*, 166 F. App'x 193, 195 (6th Cir. 2006) (holding that, where the appellant had completed his custodial sentence, any challenge to that portion of the sentence was moot). Arhebamen argues that we should remand the case for reconsideration of the one-year term of supervised-release because the district court allegedly treated that portion of the sentence as mandatory.

When Arhebamen originally received his sentence in 2001, the district court was required to include the one-year term of supervised release. *See* U.S.S.G. §§ 5D1.1-2 (mandating one year of supervised release to follow a Class E felony sentence of more than one year). But the Guidelines that define supervised-release sentences, like those that calculate terms of imprisonment, are now advisory. *Maken*, 510 F.3d at 656 n.3 (noting that *Booker* also governs sentences of supervised release). In resentencing Arhebamen, the district court simply stated that "for all of the reasons that the Court has indicated and after due consideration of the sentencing guidelines and the factors reflected therein, as well as the factors contained in [18 U.S.C. § 3553], the Court resentences this defendant to a sentence of 21 months. . . ." The court went on to summarily reimpose the same one-year term of supervised release, stating that "[f]ollowing the defendant's release from imprisonment, he will be placed on a term of supervised release for a period of one year."

According to the statute that controls supervised-release sentencing, most of the factors from § 3553(a) must be considered by a district court in imposing a term of supervised release. 18 U.S.C. § 3583(c). Arhebamen argues that his reimposed sentence was procedurally unreasonable because the district court failed to consider its authority to impose a shorter period of supervised release than the one-year term dictated by the previously mandatory Guidelines and did not perform the analysis required by §§ 3553(a) and 3583(c).

We agree with Arhebamen that the supervised-release term was summarily imposed without an adequate explanation. Contrary to the suggestion of our dissenting colleague, our conclusion regarding this issue is not based upon the district court's failure to repeat its § 3553(a) analysis with respect to the supervised-release term. Such repetition would serve no useful purpose in the ordinary case. *See, e.g.*, *United States v. Berry*, No. 08-1048, — F.3d —, 2009 WL 1323556 at *9 (6th Cir. 2009) (holding that a district court need not repeat the § 3553(a) factors when determining whether to impose a sentence consecutively or concurrently). Rather, the procedural error here stems from the district court's failure to recognize that Arhebamen's completion of his custodial sentence rendered that portion moot at the resentencing stage. This error is apparent in the sentencing court's incorrect statement that it "could, in fact, sentence [Arhebamen] to a higher sentence than . . . the last time because the guidelines are not mandatory." The context surrounding that statement clearly shows that the quoted remark refers to the custodial portion of the sentence.

We therefore conclude that the district court erred when it reimposed a custodial sentence that had already been served, and we decline to transfer the district court's perfunctory § 3553(a) analysis with respect to the moot custodial sentence to its analysis-free reimposition of the supervised-release term. In light of this procedural error, we remand the case to the district court for consideration of whether the now-advisory period of supervised release is appropriate in this case. *See, e.g.*, *Lewis*, 166 F. App'x at 196 (vacating a supervised-release sentence in a case where the custodial sentence was moot and remanding for reconsideration pursuant to § 3583(c)).

**C.     Arhebamen's 152-month sentence**

We now turn to Arhebamen's appeal of the sentence that he is currently serving—the 152 months of imprisonment for failure to appear at sentencing, making false claims of United States citizenship, corruptly endeavoring to obstruct justice by lying to the Probation Office, and making false statements to judicial officials. Arhebamen argues that the district court abused its discretion when it increased his total offense level from 19 to 28 and his criminal history category from V to VI. These increases more than doubled the applicable Guidelines range.

A district court that considers a departure from the Guidelines range must decide whether any features of the case "take it outside the Guidelines' 'heartland' and make it a special, or unusual, case." *United States v. Erpenbeck*, 532 F.3d 423, 439-40 (6th Cir. 2008) (quoting *Koon v. United States*, 518 U.S. 81, 95 (1996)). The court must then proceed to determine whether "the Commission [has] forbidden departures based on those features" and, if not, whether a departure based on those features is either encouraged or discouraged by the Commission. *Koon*, 518 U.S. at 95. We will consider each of the upward departures in this case individually. Because the district court used the 2000 version of the Sentencing Guidelines Manual, all references are to that version.

### 1.     *Departure for obstruction of justice*

In its calculation of Arhebamen's base offense level, the district court applied a two-level enhancement under § 3C1.1 of the Sentencing Guidelines for providing materially false testimony during the trial. The district court supported the enhancement for obstruction of justice by enumerating four instances where Arhebamen perjured himself: (1) false statements regarding his name, birth date, and place of birth; (2) false claims about having informed his probation officer about his use of the name Mark Arhebamen; (3) a false statement that Judge Rosen's clerk had told him not to worry about appearing for his sentencing in the tax-fraud case, and (4) a false claim that he had taken correspondence courses from Oxford University Press.

In addition to the § 3C1.1 obstruction enhancement, the district court applied a two-level upward departure pursuant to U.S.S.G. § 5K2.0, stating that "[t]he extent of [Arhebamen's] willful and obstructive behavior . . . is not adequately taken into consideration by the 2 level enhancement of § 3C1.1." The court reasoned that Arhebamen's obstructive behavior fell "outside the heartland of cases considered by the Sentencing Guidelines" because he not only committed perjury at trial, but also: (1) filed many appeals of unappealable orders during the trial, (2) refused to accept case-related documents that his counsel offered to Arhebamen for review—behavior that resulted in a contempt order that was later purged, and (3) filed a meritless request for the district judge to recuse himself. According to the court, this behavior warranted the two-level § 5K2.0 upward departure in addition to the two-level § 3C1.1 obstruction enhancement because such "conduct demonstrates a pattern of abuse of the judicial system by [Arhebamen] and . . . related directly to his attempts to exert undue influence on the . . . proceedings."

Section 5K2.0 provides that the district court may "impose a sentence outside the range established by the applicable guidelines" where "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission." Departures under this section therefore fall into two categories—departures based on facts of a different kind than those taken into account by the underlying Guidelines and departures where the relevant circumstance is present to an unusually large or small degree. The district court here did not opine that Arhebamen had perjured himself at trial to an unusual degree, but rather concluded that Arhebamen's meritless appeals and frivolous motions, together with his refusal to accept documents offered by his attorney, warranted the § 5K2.0 departure. In other words, this case falls in the first category of departures purportedly based on circumstances of a kind not contemplated by the underlying obstruction-of-justice Guideline.

Arhebamen argues that the relevant "extraordinary" facts here are not of a kind that warrants a § 5K2.0 departure. We agree. In essence, the district court applied the

§ 5K2.0 departure because Arhebamen's abysmal lawyering on his own behalf unnecessarily delayed the proceedings against him.

The district court cited two cases in support of its decision to add a § 5K2.0 departure onto the §3C1.1 obstruction enhancement. One of the cases is *United States v. Furkin*, 119 F.3d 1276, 1284 (7th Cir. 1997), where the court affirmed a § 5K2.0 departure because the defendant's "conduct was far more severe than the ordinary case where the obstruction of justice enhancement applies." The defendant in that case had instructed three witnesses to lie to the grand jury, had encouraged two others to sign back-dated leases, and had intimidated another. *Id.* at 1283-84. He also hid the profits of his illegal gambling business. *Id.* at 1284. Such conduct, according to the court, constituted obstruction to a greater degree than in the usual §3C1.1 obstruction-enhancement case. *Id.* Arhebamen's case, by contrast, involves a departure based on conduct of an entirely different kind than his obstruction-enhancement conduct of perjury.

The second case cited by the district court, *United States v. Ventura*, 146 F.3d 91 (2d Cir. 1998), is more on point because it is an "of a kind" case like Arhebamen's. In *Ventura*, the district court first enhanced the sentence pursuant to § 3C1.1 due to the defendant's failure to appear at sentencing, and then departed upward under § 5K2.0 because the defendant also submitted a fraudulent birth certificate. *Id.* at 96. The Second Circuit affirmed, noting that "departure may be especially justified where, as here, the defendant obstructed justice more than once through wholly discrete and unrelated acts." *Id.* at 97.

Another case, *United States v. Black*, 78 F.3d 1, 5 (1st Cir. 1996), has been cited by the government in support of the departure. In *Black*, the defendant perjured himself at trial, resulting in a § 3C1.1 enhancement, and also attempted to hide assets in order to frustrate the collection of a fine or restitution. *Id.* The First Circuit upheld the district court's imposition of a § 5K2.0 departure for the latter conduct because it amounted to "a different act of obstruction." *Id.* at 6.

Both *Ventura* and *Black* rested their § 5K2.0 departures upon separate acts of obstructive conduct similar to those set forth in § 3C1.1. Here, by contrast, the additional conduct relied upon by the district court—Arhebamen's filing of meritless appeals and recusal motions as well as his refusal to accept documents offered by his attorney—are not remotely analogous to the examples of obstructive behavior listed in § 3C1.1, which include perjury, failure to appear for a proceeding, providing false statements to judges and other officials, tampering with witnesses, and the like. Arhebamen's acts were basically those of an overzealous pro se advocate. Although such behavior is undoubtedly annoying from the district court's point of view, it is not "obstructive" in the sense suggested by § 3C1.1. Our dissenting colleague, however, describes Arhebamen's conduct as "a deliberate effort to delay and frustrate court proceedings" that "was so egregious as to be outside the heartland of similar cases." (Dissenting Op. at 32, 33) In our view, these characterizations are simply not supported by the record.

Moreover, Application Note 7 to § 3C1.1 makes clear that the enhancement under that provision should not be applied in cases where the charged offense is also an obstruction offense, "except if a significant further obstruction occurred during the investigation, prosecution, or sentencing of the obstruction offense itself (*e.g.*, if the defendant threatened a witness during the course of the prosecution for the obstruction offense)." Arhebamen's perjury at his trial presumptively qualifies as an "obstruction offense," although we need not decide that issue because Arhebamen does not challenge the application of the § 3C1.1 enhancement itself. But in light of the high bar for § 3C1.1's application in this type of case, we conclude that the district court's decision to tack an *additional* departure under § 5K2.0 onto § 3C1.1 was erroneous.

The Sentencing Commission makes no provision for upward departures based upon a pro se defendant's meritless filings—however vexatious, numerous, or annoying. Nor does any case to our knowledge endorse such a departure. We therefore conclude that a § 5K2.0 departure may not be based on a defendant's poor performance as a pro se advocate regardless of the district court's conclusion that the defendant's conduct

"obstructed" the proceedings. Such a departure amounted to a procedural error in the form of "failing to calculate (or improperly calculating) the Guidelines range . . . ." *Gall*, 128 S. Ct. at 597.

### 2.    *Departures related to the conviction for failing to appear at sentencing*

The next two departures imposed by the district court related to Arhebamen's conviction for failure to appear at sentencing in his tax-fraud case. In connection with his failure to appear, Arhebamen obtained reports from two physicians who recommended postponement of the sentencing hearing. He also moved to Arizona without authorization. The district court invoked the Guidelines departure provisions to increase Arhebamen's sentence in response to those acts. We will address the two departures in turn.

### a.    *Disrupting sentencing proceedings*

The district court imposed a two-level upward departure pursuant to U.S.S.G. § 5K2.7, which relates to the disruption of governmental functions. This departure was imposed because Arhebamen not only failed to appear for sentencing in the tax-fraud case, but also "misled [two physicians] about his background and circumstances and used letters from [the physicians] to manipulate proceedings before Judge Rosen and avoid being sentenced." The court stated that Arhebamen "actively solicited [the two physicians'] unknowing assistance," and concluded that such manipulation "and the corresponding adjournment of sentencing is an unusual aggravating circumstance that was not adequately considered by the Sentencing Guidelines." Reasoning that the "conduct resulted in the significant disruption of a government function (*i.e.*, the timely sentencing of the Defendant)," the court imposed a § 5K2.7 departure.

The policy statement regarding § 5K2.7 provides that

[d]eparture from the guidelines ordinarily would not be justified when the offense of conviction is an offense such as bribery or obstruction of justice; in such cases interference with a governmental function is inherent in the offense, and unless the circumstances are unusual the guidelines will reflect the appropriate punishment for such interference.

Both parties agree that the underlying offense here—the failure to appear for sentencing—is one in which "interference with a governmental function is inherent." *Id.* A Guidelines departure is therefore appropriate only if the "circumstances are unusual," such that the underlying Guideline does not "reflect the appropriate punishment" for Arhebamen's failure to appear at his July 2001 sentencing in the tax-fraud case. *Id.*

Arhebamen argues that his alleged manipulation of the two physicians does not create "unusual circumstances" warranting additional punishment. He contends that "obtaining an adjournment of less than a month [by obtaining a recommendation from the first physician] hardly constitutes an extraordinary or egregious disruption of the administration of justice," and that "the fact that [he] enlisted the support of a report by [the second physician] did not make the delay any longer, nor did it disrupt the judicial process any further." The government argues in response that "the circumstances surrounding defendant's failure to appear [were] particularly significant" because they "involved the unwitting involvement of third parties."

In support of this argument, the government cites *United States v. Heckman*, 30 F.3d 738 (6th Cir. 1994). That case involved a conviction for filing false documents with the IRS—an inherently disruptive act. The court affirmed the application of a § 5K2.7 departure because, in addition to attempting to avoid his own tax liability, the defendant "used the IRS to harass numerous persons who had the misfortune of coming into contact with him." *Id.* at 743. According to the government, Arhebamen's alleged harassment of the two physicians as innocent third parties makes *Heckman* like this case. But Arhebamen did not harass the physicians or cause them any harm or inconvenience;

rather, he lied to them about the seriousness of the charges against him and his criminal background in an initially successful attempt to delay his sentencing.

No case cited by the government suggests that the *means* employed by a defendant to interfere with a government function is material in deciding whether to apply the § 5K2.7 departure. Instead, the caselaw supports the proposition that such a departure is appropriate where the *harm* is greater than usual for the initial government-interfering offense, or where the defendant has interfered with a second, independent government function. *See Heckman*, 30 F.3d at 743; *United States v. Garcia*, 900 F.2d 45, 49 (5th Cir. 1990) (affirming a § 5K2.7 departure for a defendant convicted of mail theft because the scale of the operation caused an unusually serious disruption of the mail); *United States v. Anderson*, 353 F.3d 490, 508 (6th Cir. 2003) (*superceded by statute on other grounds as recognized in United States v. McBride*, 362 F.3d 360, 374 (6th Cir. 2004)) (affirming a § 5K2.7 upward departure from a tax-fraud sentence for the defendants' disruptive behavior at trial).

In this case, Arhebamen's lies to the first physician delayed his sentence by one additional month beyond the delay that would have ensued had he simply failed to appear for his original sentencing date. No additional delay was caused by the report of the second physician. Nor does the record reflect that the physicians themselves were harmed or even inconvenienced by Arhebamen's dishonest interactions with them. In light of § 5K2.7's command that the departure not apply except in unusual circumstances, we conclude that the district court abused its discretion in departing upward by two levels on the basis of a one-month delay to Arhebamen's sentencing. The underlying Guideline § 2J1.6 adequately accounts for the harm caused by Arhebamen's failure to appear at his sentencing, making the use of § 5K2.7 to add additional punishment a procedural error.

### b.      *Relocation to Arizona*

During the one-month extension period that the district court granted in response to the first physician's report, Arhebamen moved to Arizona in direct defiance of his pretrial-services officer's orders.  In response to this act, the court imposed an additional departure pursuant to § 5K2.0 in connection with the conviction for failure to appear at sentencing.  The district court decided that a two-level upward departure was appropriate for Arhebamen's move to Arizona by employing an "analogy to § 2F1.1(b)(6)(A) (2 level Specific Offense Characteristic where Defendant 'relocated or participated in relocating, a fraudulent scheme in order to avoid law enforcement or regulatory officials')."

As set forth above, § 5K2.0 departures are appropriate where the case involves characteristics "of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission."  The government argues that this departure was appropriate because the "relocation—in direct contravention of the orders of his pretrial services officer—was a serious aggravating circumstance" that demonstrated "total disregard for the authority of the district court and ma[d]e [this] case much different from the average failure to appear case."  Arhebamen counters that because the jurisdiction of the U.S. Marshall is nationwide, he was at all times "within the grasp of the authorities to return him to custody," and "[t]he fact that he did not stay in the Eastern District of Michigan can hardly be characterized as unusual or extraordinary so as to impose an additional 2 levels of departure."

We do not find the district court's analogy to U.S.S.G. § 2F1.1(b)(6)(A) persuasive here.  Nothing in the record reflects that Arhebamen relocated in order "to avoid law enforcement or regulatory officials" or the authority of the court. *See id.* To the contrary, Arhebamen's wife provided a forwarding address to the pretrial-services officer and, as a result, Arhebamen was promptly arrested after he failed to appear.  In light of these facts, Arhebamen's move to Arizona did not take his failure to appear for sentencing out of the "heartland" of similar cases, or burden the government in any unusual way.  We are also unaware of any case that endorses the use of § 5K2.0 under

analogous circumstances.  In sum, we conclude that the district court committed a procedural error in imposing this two-level upward departure.

### 3.     *Departures related to the false-statements convictions*

The next two departures at issue in this case involve Arhebamen's convictions for making false statements to the United States Probation Office.  We address each in turn.

#### a.     *Extent of planning*

The district court again employed § 5K2.0—the general departure provision for acts "of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission"—to further enhance Arhebamen's sentence under U.S.S.G. § 2F1.1(b)(2)(A).  According to the district court, Arhebamen's

> false statements to the Probation Department involved more than minimal planning within the meaning of § 1B1.1 cmt. n.1(f), and a 2 level enhancement of [the false-statement convictions] is appropriate pursuant to § 2F1.1(b)(2)(A).  This 2 level enhancement, however, does not adequately take into account the extensiveness and history of the planning that has gone into the Defendant's false claim to the identity of McMaine Allen O'Georgia, and an upwards departure is warranted.

The § 2F1.1(b)(2)(A) enhancement applies in cases where the extent of planning is "more . . . than is typical for commission of the offense in its typical form," and is "deemed present in any case involving repeated acts over a period of time." U.S.S.G. § 1B1.1 cmt. 1(f) (defining "more than minimal planning").  According to the district court, the specific enhancement was insufficient to capture the full extent of Arhebamen's use of the O'Georgia alias, which lasted more than twenty years.  The court thus added an additional one-level departure pursuant to § 5K2.0 because the degree of planning extended over such a long period of time.

Arhebamen argues that the district court abused its discretion in invoking this one-level departure because "[t]he fact that a defendant in a fraud type offense used an alias for a lengthy period of time is not extraordinary, and the district court failed to provide any evidence that this case should be so considered."  We disagree.  Because the

district court is in the best position to compare a wide variety of cases over time, it has wide discretion to decide how much planning is extraordinary, such that the "more than minimal planning" enhancement is insufficient on its own.

Arhebamen's multi-decade, elaborate attempt to take on his invented identity certainly involved an extraordinary number of "repeated acts over a period of time." We therefore conclude that the district court did not abuse its discretion by invoking this one-level departure pursuant to § 5K2.0. *See, e.g.*, *United States v. Kay*, 83 F.3d 98, 102 (5th Cir. 1998) ("[T]he repetitiveness, intricacy, and sophistication of Kay's scheme were substantially in excess of that which ordinarily is involved in the crime of bank fraud, and . . . this level of malfeasance was not accounted for by the 'more than minimal planning' adjustment.").

### b.        *Concealing a prior crime*

The district court next employed U.S.S.G. § 5K2.9 to depart upward by two levels because Arhebamen "falsely claimed that he had been born in Albany, Georgia on May 5, 1955 . . . in order to conceal the commission of another offense—*i.e.*, his prior False Claim to U.S. Citizenship during the guilty plea before Judge Rosen." Section 5K2.9 states that "[i]f the defendant committed the offense in order to facilitate or conceal the commission of another offense, the court may increase the sentence above the guideline range to reflect the actual seriousness of the defendant's conduct."

Arhebamen argues "that there is no evidence that he made false statements in order to conceal the commission of another offense," and that the consistent use of the O'Georgia alias for such a long period suggests a lack of such a purpose. The government responds by pointing out that Arhebamen's consistency in using his false identity in fact "emphasizes his criminal purpose," noting that he "did not accidentally adopt the identity of McMaine O'Georgia; rather, it was part of a deliberate and sophisticated plan" for the purpose of "conceal[ing] his true identity."

Arhebamen has been subject to removal from the United States since the expiration of his visitor's visa in the late 1970s. The district court therefore reasonably

concluded that Arhebamen did not call himself O'Georgia for two decades simply because he preferred the name, but rather because he wished to avoid removal from the United States. No abuse of discretion is apparent in the district court's determination that each time Arhebamen gave the name O'Georgia—to the court, the Probation Office, or others—he did so at least in part for the criminal purpose of concealing his past commissions of identity fraud.

### 4.      *Inadequacy of criminal history*

Finally, the district court departed upward in this case "[b]ased upon the nature of [Arhebamen's] criminal history, and the likelihood that [he] will recidivate." The district court employed U.S.S.G. § 4A1.3, which provides that when "reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes, the court may consider imposing a sentence departing from the otherwise applicable guideline range." In support of this final departure, the court cited, among other things, Arhebamen's extended unlawful presence in the United States, the extensive scope of his tax-fraud activities (preparing 171 false federal income tax returns), civil judgments against him totaling more than $150,000, a period of about two months in 1995 when he was married to two women at the same time, and the more than $280,000 of unpaid child support that he owed at the time to one of his ex-wives. The district court thus adjusted Arhebamen's criminal history category from V to VI.

Section 4A1.3 provides that a departure for the underrepresentation of a defendant's criminal history category is appropriate where "prior sentence(s) of substantially more than one year [were] imposed as a result of independent crimes committed on different occasions" and where "prior similar misconduct [was] established by a civil adjudication or by a failure to comply with an administrative order." U.S.S.G. § 4A1.3 (b)-(c). The district court's consideration of Arhebamen's wrongdoings, particularly his outstanding civil debts and child support, was therefore appropriate. We find no error in the district court's decision to increase Arhebamen's criminal history category from V to VI.

**D.        Corrected advisory range**

As set forth above, the district court erred in imposing two-level increases in Arhebamen's offense level for obstruction of justice, pursuant to § 5K2.0; for disruption of a governmental function by lying to his physicians in an attempt to postpone sentencing, pursuant to § 5K2.7; and for moving to Arizona, pursuant to § 5K2.0. These errors amount to "significant procedural error" in the form of an improper calculation of the Guidelines range. *See Gall v. United States*, 128 S. Ct. 586, 597 (2007). The corrected offense level in this case is thus 22 (instead of 28), with the criminal history category remaining at VI. This results in an advisory Guidelines range of 84 to 105 months of imprisonment.

Where a Guidelines departure provision has been erroneously applied, the resulting sentence may still be procedurally reasonable if the district court has adequately explained it by reference to the 18 U.S.C. § 3553(a) factors. In such a case, the sentence would be unreasonable as a departure but reasonable as a variance from the advisory Guidelines range. *See, e.g.*, *United States v. Erpenbeck*, 532 F.3d 423, 441 (6th Cir. 2008) ("The district court's error [in departing upward under U.S.S.G. § 5K2.3] is harmless . . . [where the district court] did not have to base the 65-month enhancement on the Guidelines-departure factors because the sentence was sufficiently justified based upon the 18 U.S.C. § 3553(a) factors alone.")

But the district court here did not independently explain the 152-month sentence by reference to the § 3553(a) factors, an explanation required by the Supreme Court in *Gall*. *See* 128 S. Ct. at 597. Instead, the court simply incorporated its analysis from the original pre-*Booker* Guidelines-based sentence. The court's only statement with respect to § 3553(a) was the following:

> Pursuant to § 3553(a), this Court is to impose a sentence sufficient, but not greater than necessary, to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other

correctional treatment in the most effective manner. . . . Based on the purposes set forth in 18 U.S.C. § 3553(a)(2), and the considerations of § 3553(a)(1), & (3)-(7), the Court imposes upon the Defendant a 'total punishment' of a term of imprisonment of 152 months.

With the above perfunctory recitation and the incorporation of the initial sentencing order, the district court again imposed a 152-month sentence, which was within the Guidelines range as calculated by the court. But, as stated above, the 152-month sentence in fact amounts to a 47-month upward variance from the properly calculated Guidelines range of 84 to 105 months of imprisonment. The dissent, applying harmless-error review, appears to be convinced that the district court would nonetheless impose an identical sentence in the form of a variance in lieu of a Guidelines departure. (Dissenting Op. at 37–38) We decline to make that assumption, and in any event cannot review the reasonableness of such a result without the district court providing the necessary § 3553(a) analysis to support a variance in the first instance. *See United States v. Johnson*, 467 F.3d 559, 564 (6th Cir. 2006) ("To establish harmless error such that this Court lets stand a defendant's sentence in spite of errors at trial or sentencing below, . . . the government must demonstrate to this Court with certainty that the error at sentencing did not cause[] the defendant to receive a more severe sentence." (citations and internal quotation marks omitted)). As a result, we vacate Arhebamen's sentence and remand the case to the district court for resentencing. The court should consider the correct advisory range and adequately explain its application of the § 3553(a) factors in imposing a new sentence.

Although Arhebamen requests resentencing before a different district judge "to preserve the appearance of justice," we do not believe that such a measure is necessary in this case. *See, e.g.*, *United States v. Elfgeeh*, 515 F.3d 100, 137 (2d Cir. 2008) ("As a general rule, even when a sentencing judge has been shown to have held erroneous views or made incorrect findings, . . . resentencing before a different judge is required only in the rare instance in which the judge's fairness or the appearance of the judge's fairness is seriously in doubt." (citation omitted) (alteration in original)). The record in the present case gives us no reason to question the fairness of either of the district judges below.

## III.  CONCLUSION

For all of the reasons set forth above, we **VACATE** both of Arhebamen's sentences and **REMAND** the cases to the district court for resentencing consistent with this opinion.

---

## DISSENTING IN PART, CONCURRING IN PART

---

JACK ZOUHARY, District Judge.  Because I find the two sentences involved in this appeal were not the result of procedural errors, and because I find the district judges did not abuse their discretion, I respectfully dissent as to parts II.B, II.C(1), II.C(2), and II.D.  I concur as to parts II.C(3) and II.C(4) of the Opinion.

### STANDARD OF REVIEW

"A district court's sentencing determination is reviewed 'under a deferential abuse-of-discretion standard' for reasonableness, which has both a procedural and a substantive component." *United States v. Erpenbeck*, 532 F.3d 423, 430 (6th Cir. 2008) (*quoting Gall v. United States*, ___U.S.___, 128 S. Ct. 586, 597 (2007)).

This Court reviews a district court's decision to depart upward under Chapter 5 of the advisory Guidelines under "the same 'standards we use to judge the procedural and substantive reasonableness of a variance from any guidelines range.'" *Id.* at 440 (*quoting United States v. Vowell*, 516 F.3d 503, 510 (6th Cir. 2008)).  Thus, a district court's sentencing determination is reviewed under an abuse-of-discretion standard for procedural reasonableness, and "[a] district court necessarily abuses its sentencing discretion if it 'commit[s][a] significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range.'" *Id.* at 430 (*quoting Gall*, 128 S. Ct. at 597).

### IMPOSITION OF SUPERVISED RELEASE IN CASE NO. 05-2598

Did the district court fulfill its procedural obligation under 18 U.S.C. §§ 3553 and 3583 when it resentenced Arhebamen?  Yes -- the resentencing and imposition of the one-year term of supervised release was procedurally reasonable.

Arhebamen pled guilty and was sentenced to 21 months imprisonment and one year of supervised release.  In 2005, this Court remanded the case back to the district

court for resentencing in light of *United States v. Booker*, 543 U.S. 220 (2005). At the resentencing hearing, the district court imposed the same sentence of 21 months imprisonment and one year of supervised release. At the time of the resentencing, Arhebamen had completed his custody sentence but had yet to begin his supervised release because he remained incarcerated for other distinct convictions.

When imposing a term of supervised release, the district court considers 18 U.S.C. § 3583(c), which in turn refers to those factors in 18 U.S.C. § 3553:

> (c) Factors to be considered in including a term of supervised release. -- The court, in determining whether to include a term of supervised release, and, if a term of supervised release is to be included, in determining the length of the term and the conditions of supervised release, shall consider the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7).

At the resentencing hearing, the district court acknowledged its discretion and the factors to be considered under Section 3553, making the following statements:

> . . . [O]n remand for resentencing under *Booker* because the guidelines are not mandatory, I . . . could, in fact, sentence you to a higher sentence then I sentenced you the last time because the guidelines are not mandatory (Tr. 31).
>
> *   *   *
>
> The guidelines, first of all, are no longer mandatory, so I can certainly, under both the sentencing guidelines as voluntary and as offering guidance, but perhaps more importantly under the sentencing statute [18 U.S.C. § 3553], I can certainly take into account all of the surrounding conduct that was part of an overall plan or scheme (Tr. 34).
>
> *   *   *
>
> [F]or all the reasons that the Court has indicated and after due consideration of the sentencing guidelines and the factors reflected therein, as well as the factors contained in [18 U.S.C. § 3553] the Court resentences this defendant to a sentence of 21 months.
>
> Defendant will be given – the Court recommends the defendant be given credit on this sentence for time served related to this sentence.

Following the defendant's release from imprisonment, he will be placed on a term of supervised release for a period of one year (Tr. 37-38).

The majority relies upon *United States v. Lewis*, 166 F. App'x 193 (6th Cir. 2006) as support for the alleged error. The unique facts of that case are as follows. Defendant, convicted of fraud, was sentenced to 33 months imprisonment and two years probation. This Court remanded in 2004 for resentencing after concluding the district court incorrectly applied certain enhancements (§§ 2B1.(b)(1)(C) & (b)(2)(A)(i)) by failing to make specific findings of fact as to the amount of loss, the number of victims, and the scope of defendant's agreement with co-conspirators. Defendant was resentenced by the district court to 30 months imprisonment and two years probation, applying the same enhancements. The United States Supreme Court issued *Booker* in 2005. Defendant appealed again, and while his appeal was pending, he completed his custodial sentence.

The *Lewis* court in 2006 again held the district court failed to make the necessary specific findings supporting the enhancements. *Id.* at 195. Defendant had completed his custodial sentence, but the court held the appeal was not moot because the two-year probation sentence was not yet completed. The case was remanded a second time for resentencing *in light of its finding the district court erred (again) in applying the enhancements, which in turn may have affected the term of supervised release, and in light of* Booker. *Id.* at 195-96.

Here, there was no enhancement or other Guidelines error, and the district court specifically recognized and verbalized its discretion under *Booker*, acknowledging "the sentencing guidelines . . . as well as the factors contained in [18 U.S.C. § 3553]" when resentencing Arhebamen to one year of supervised release.

*United States v. Presto*, 498 F.3d 415 (6th Cir. 2007), is more on point. In that case, defendant was convicted of receiving child pornography and sentenced to 135 months imprisonment and a lifetime of supervised release. Defendant appealed, challenging only the lifetime supervised release. At the sentencing hearing, the district court stated it had "'considered the nature and circumstances of the offense, the history

and characteristics of the defendant, . . . the advisory guideline range that's applicable to this case, as well as those other factors listed in [18 U.S.C. § 3553(a)], and all the reasons I just stated.'" *Id.* at 418 (*quoting* sentencing transcript).  This Court held the "'reasons just stated' referred to the [district] court's foregoing discussion of the harmfulness of possession of child pornography in general and of defendant's conduct in particular." *Id.*  This Court approved this "single consideration of the sentencing factors, which embraced both the incarceration sentence and the supervised release term," because 18 U.S.C. § 3583(c) is encompassed in the 18 U.S.C. § 3553(a) factors. *Id.* at 419.

Furthermore, the *Presto* court cited *United States v. Coffee*, 180 F. App'x 562 (6th Cir. 2006), as support for its position.  In that case, defendant was sentenced to 12 months imprisonment and three years supervised release.  On appeal, he challenged the reasonableness of his three-year term of supervised release.  At the sentencing hearing, the district court discussed the Section 3553(a) factors.  *Id.* at 565-66.  The *Coffee* court concluded the three-year term of supervised release was both procedurally and substantively reasonable.

Finally, the majority's decision hinges on the belief the district court failed to recognize the mootness of the custodial sentence.  Not so.  The following colloquy took place at the *outset* of the sentencing hearing:

| | |
|---|---|
| THE COURT (Judge Rosen): | As I understand it, you have completed your sentence that I imposed on you in my case, but you are serving a sentence in the case that you were convicted on in front of Judge Zatkoff; is that correct? |
| THE DEFENDANT: | Yes. |

(Nov. 9, 2005 Resentencing Tr., pp. 12-13).  Thus, the district court *specifically* acknowledged Arhebamen had completed the custodial portion of the sentence.

The majority is troubled because after the district court acknowledged that Arhebamen's custodial sentence was complete and therefore moot, the district court proceeded to evaluate what length of custodial sentence would be appropriate and then

reimposed the same 21-month custodial sentence. However, I find that a district court does not err when it imposes a term of supervised release by proceeding through the same steps the court takes when imposing a custodial sentence. Indeed, calculating a term of supervised release without going through an adequate explanation of a custodial sentence, even if moot, would be suspect. Lengths of custodial sentences and terms of supervised release are interdependent, and district courts cannot impose a term of supervised release in a vacuum, without reference to the custodial sentence. *See, e.g., Lewis,* 166 F. App'x at 195-96 (remanding for resentencing because district court erred when it applied enhancements, even though defendant had completed custodial sentence). Indeed, the interplay between 18 U.S.C. §§ 3583 and 3553 demands as much. The majority's position is irreconcilable with its reliance on *Lewis*, where the court expressly recognized that application of enhancements in a completed custodial sentence can affect the term of supervised release. *Id.*

The district court clearly understood both that Arhebamen had completed his custodial sentence and that the Guidelines were advisory, and then properly reviewed the Section 3553 factors, to arrive at an appropriate term of supervised release. Therefore, I would affirm.

### IMPOSITION OF SENTENCE IN CASE NO. 06-2505

Arhebamen was sentenced to 152 months imprisonment in April 2004. He was resentenced to 152 months imprisonment in November 2006, after the case was remanded in light of *Booker.* Because I find the district court did not err when it applied upward departures, I respectfully dissent. I further note that any procedural error in the application of the upward departures was harmless because the district court could have varied upward, under identical reasoning, pursuant to Section 3553(a).

***Obstruction (18 U.S.C. § 1503): § 5K2.0 Enhancement***

Arhebamen was convicted of obstruction of justice under 18 U.S.C. § 1503 for lying to a U.S. probation official. The district court concluded enhancements under both §§ 3C1.1 and 5K2.0 applied because during the course of the obstruction of justice prosecution, Arhebamen engaged in other, distinct obstructive acts.

First, the district court applied a two-level enhancement under § 3C1.1, finding Arhebamen provided materially false testimony during trial. The district court cited four instances in which Arhebamen perjured himself at trial.[1]

Second, the district court applied a two-level enhancement under § 5K2.0, finding "[t]he extent of [Arhebamen's] willful and obstructive behavior is not adequately taken into consideration by the 2-level enhancement of § 3C1.1 [providing materially false testimony during trial]" (JA 131). In support of this enhancement, the district court pointed to (1) Arhebamen's filing of twelve appeals to the court of appeals during trial, ten of which were unappealable orders, even after the district court explained the court of appeals typically only has jurisdiction to hear appeals from "final decisions" of the district court; (2) refusal to accept case-related documents that his counsel offered to Arhebamen for review; and (3) the filing of a meritless request for the district judge to recuse himself, asserting Judges Zatkoff and Rosen were engaged in a religious conspiracy with one of Arhebamen's creditors.

The district court concluded that the above behavior, "taken together," demonstrated a "pattern of abuse of the judicial system by [Arhebamen]," warranting an upward departure under § 5K2.0 (JA 133).

---

[1](1) He testified that his name was McMaine O'Georgia, that he was born on May 5, 1955, and that he obtained a delayed birth certificate from the State of Georgia using that name and date of birth. INS records from his arrival in the United States in 1977 contradict this testimony. (2) Arhebamen testified that he had informed his probation officer that he previously used the name Mark Arhebamen and used a specific social security number. Statements from the probation officer contradict this testimony. (3) He testified he spoke with a clerk from Judge Rosen's chambers prior to his scheduled sentencing and that the clerk told him that Judge Rosen was excusing him from the sentencing and not to worry about appearing at the scheduled sentencing. The district court found this statement to be false as well. (4) Arhebamen testified at trial that he had taken correspondence courses from Oxford University Press. A statement from a representative of Oxford University Press indicated that it never offered correspondence courses.

A Guidelines departure "may be warranted in an exceptional case, even though the circumstance that forms the basis for the departure is taken into consideration in determining the guideline range, if the court determines that such circumstance is present in the offense to a degree substantially in excess of, or substantially below, that which ordinarily is involved in that kind of offense." § 5K2.0(a)(3).  The introduction to the Sentencing Guidelines states:

> The Commission intends the sentencing courts to treat each guideline as carving out a "heartland," a set of typical cases embodying the conduct that each guideline describes.  When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted.  Section 5H1.10 (Race, Sex, National Origin, Creed, Religion, and Socio-Economic Status), § 5H1.12 (Lack of Guidance as a Youth and Similar Circumstances), the third sentence of § 5H1.4 (Physical Condition, Including Drug or Alcohol Dependence or Abuse), the last sentence of § 5K2.12 (Coercion and Duress), and § 5K2.19 (Post-Sentencing Rehabilitative Efforts) list several factors that the court cannot take into account as grounds for departure. *With those specific exceptions, however, the Commission does not intend to limit the kinds of factors, whether or not mentioned anywhere else in the guidelines, that could constitute grounds for departure in an unusual case.*

U.S.S.G. ch. 1, pt. A(1), n.4(b) (emphasis added).

Thus, the Commission specifically refused to further limit what kind of factors can be considered when deciding whether to depart because "it is difficult to prescribe a single set of guidelines that encompasses the vast range of human conduct potentially relevant to a sentencing decision." *Id.*  The Commission explained that a departure "may rest upon grounds referred to in Chapter Five, Part K (Departures) or on grounds not mentioned in the guidelines.  While Chapter Five, Part K lists factors that the Commission believes may constitute grounds for departure, the list is not exhaustive. The Commission recognizes that there may be other grounds for departure that are not mentioned." *Id.*

In its Sentencing Opinion and Order, the district court cited *United States v. Furkin*, 119 F.3d 1276 (7th Cir. 1997) and *United States v. Ventura*, 146 F.3d 91 (2d Cir.

1998) as support for applying a two-level enhancement to Arhebamen's obstruction of justice conviction under § 5K2.0.

In *Furkin*, the Seventh Circuit affirmed the district court's upward departure under § 5K2.0, finding the district court adequately explained how defendant's case fell outside the "heartland" of cases of conspiracy to impede the IRS. 119 F.3d at 1284. In that case, defendant encouraged many witnesses to perjure themselves and also attempted to hide assets from an illegal gambling business. *Id.* at 1283-84. The court affirmed the district court's conclusion that, much like in this case, the two-level enhancement under § 3C1.1 failed to adequately account for all of defendant's obstructive conduct. *Id.* at 1284.

In *Ventura*, the Second Circuit affirmed an upward departure under § 5K2.0, based on the district court's conclusion that the two-level enhancement under § 3C1.1 did not adequately account for defendant's obstructive behavior. 146 F.3d at 97. In that case, defendant was already subject to a § 3C1.1 enhancement because he failed to appear for sentencing. However, defendant had also lied to the court and probation officers about his age. The district court found that it could not apply a § 3C1.1 enhancement twice, and therefore concluded that § 3C1.1 could not fully account for defendant's obstructive behavior because it did not account for his false statements about his age to both the court and probation. *Id.* at 96-97. The district court determined that a two-level upward departure under § 5K2.0 was warranted in order "to reflect the renewed and repeated and different form of obstruction of justice which was attempted here and which put the Court and the government to a considerable additional effort." *Id.* at 95-96.

The Second Circuit affirmed this interpretation of the interplay between § 3C1.1 and § 5K2.0, noting that:

> . . . the language of [§ 3C1.1] and commentary suggest that the rule was drafted without consideration that the defendant might engage in multiple episodes of obstructive conduct. Multiple acts of obstruction, especially when they differ in kind or have different obstructive objectives, can be

found to fall sufficiently far outside the "heartland" conduct § 3C1.1 was designed to address that departures will be warranted.

*Id.* at 97. Furthermore, the court held that "[d]eparture may be especially justified where, as here, the defendant obstructed justice more than once through wholly discrete and unrelated acts." *Id.* In concluding the two-level enhancement under § 5K2.0 was within the district court's discretion, the court noted that the misrepresentations "caused numerous government officials to expend substantial time and resources, delayed his sentencing, and imposed additional burdens on the district court." *Id.* at 98.

Similarly, in *United States v. Black*, 78 F.3d 1, 5 (1st Cir. 1996), defendant committed perjury during his trial and then attempted to secrete assets in order to frustrate the collection of a fine or restitution. The district court applied a two-level enhancement under § 3C1.1 for defendant's perjury and also found that defendant's efforts to hide money in a sham trust justified a two-level upward departure under § 5K2.0. *Id.* The First Circuit held that the upward departure did not constitute impermissible double-counting because "the latter increase results from a different act of obstruction." *Id.* at 6.

Here, the district court found appropriate an upward departure based upon the filing of twelve meritless appeals during trial, the refusal of Arhebamen to cooperate with his legal counsel, and the filing of meritless requests for recusal asserting a religious conspiracy with one of Arhebamen's creditors. Application Note 4 to § 3C1.1 lists examples of conduct, any *one* of which justifies a two-level increase for obstruction of justice.[2] Here, Arhebamen's conduct goes far beyond "abysmal lawyering" as

---

[2]Application Note 4 reads:

**Examples of Covered Conduct.**--The following is a *non-exhaustive* list of examples of the types of conduct to which this enhancement applies:

(a) threatening, intimidating, or otherwise unlawfully influencing a co-defendant, witness, or juror, directly or indirectly, or attempting to do so;

(b) committing, suborning, or attempting to suborn perjury, including during the course of a civil proceeding if such perjury pertains to conduct that forms the basis of the offense of conviction;

(c) producing or attempting to produce a false, altered, or counterfeit document or record during an official investigation or judicial proceeding;

characterized by the majority. Rather, this conduct was obstructionist and constituted a deliberate effort to impede court proceedings. The mere fact it came in the form of purported legal filings does not negate the intentional and disruptive behavior or somehow cloak it in a veil of legitimacy.

Further, the majority characterizes the conduct here as not being "remotely analogous" to the obstructionist examples provided in Application Note 4. I disagree. The introductory sentence to Application Note 4 explicitly states that it is a *non-exhaustive* list and is merely exemplary in nature, and, moreover, Arhebamen's conduct went beyond "annoying" and was a deliberate effort to delay and frustrate court proceedings. Certainly this behavior is similar to the examples listed in Application Note 4 and is contemplated by § 3C1.1, which instructs courts to apply the two-level enhancement if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction." U.S.S.G. § 3C1.1.

---

(d) destroying or concealing or directing or procuring another person to destroy or conceal evidence that is material to an official investigation or judicial proceeding (e.g., shredding a document or destroying ledgers upon learning that an official investigation has commenced or is about to commence), or attempting to do so; however, if such conduct occurred contemporaneously with arrest (e.g., attempting to swallow or throw away a controlled substance), it shall not, standing alone, be sufficient to warrant an adjustment for obstruction unless it results in a material hindrance to the official investigation or prosecution of the instant offense or the sentencing of the offender;

(e) escaping or attempting to escape from custody before trial or sentencing; or willfully failing to appear, as ordered, for a judicial proceeding;

(f) providing materially false information to a judge or magistrate;

(g) providing a materially false statement to a law enforcement officer that significantly obstructed or impeded the official investigation or prosecution of the instant offense;

(h) providing materially false information to a probation officer in respect to a presentence or other investigation for the court;

(i) other conduct prohibited by obstruction of justice provisions under Title 18, United States Code (e.g., 18 U.S.C. §§ 1510, 1511);

(j) failing to comply with a restraining order or injunction issued pursuant to 21 U.S.C. 853(e) or with an order to repatriate property issued pursuant to 21 U.S.C. 853(p);

(k) threatening the victim of the offense in an attempt to prevent the victim from reporting the conduct constituting the offense of conviction.

This adjustment also applies to any other obstructive conduct in respect to the official investigation, prosecution, or sentencing of the instant offense where there is a separate count of conviction for such conduct.

Nor does the fact that Arhebamen's underlying offense was obstruction of justice (18 U.S.C. § 1503) prevent an upward departure under § 5K2.0. The majority correctly points out that under Application Note 7 to § 3C1.1, the Commission made clear that the two-level enhancement under § 3C1.1 should not be applied in cases where the charged offense is also an obstruction of justice offense, *unless* "a significant further obstruction occurred during the investigation, prosecution, or sentencing of the obstruction offense itself." Here, the additional obstructionist conduct the district court sought to account for under §§ 3C1.1 and 5K2.0 was entirely distinct from the underlying obstruction of justice conviction. Arhebamen's underlying conviction under 18 U.S.C. § 1503 related to lies he told a U.S. probation officer. The district court applied a two-level § 3C1.1 enhancement because Arhebamen perjured himself at trial. The district court then cited Arhebamen's meritless filings and refusal to accept paperwork as support for an upward departure under § 5K2.0. None of the conduct the district court cited for enhancements under §§ 3C1.1 and 5K2.0 related to Arhebamen's conduct in the underlying obstruction of justice prosection. In sum, Arhebamen's obstructive conduct occurred in different proceedings, took many different forms, and was so egregious as to be outside the heartland of similar cases.

### *Failure to Appear (18 U.S.C. § 3146(b)(2)): § 5K2.7 Enhancement*

On February 23, 2001, Arhebamen pled guilty to one count of aiding and assisting in the preparation of a false tax return. Sentencing was scheduled four months later on June 28. On June 25, Arhebamen approached Dr. Heasley and requested a letter from him, addressed to the district court, excusing Arhebamen from court proceedings. Arhebamen misled Dr. Heasley by telling him that he was merely under indictment (although he had already pled guilty and was to be sentenced in three days) and by denying any previous legal problems or jail sentence (although he had an extensive criminal history which included previous incarceration).

Dr. Heasley complied with Arhebamen's request and that day faxed a letter to the district judge's chambers recommending that Arhebamen not attend court proceedings

until he was stabilized, and indicating that Arhebamen's next appointment was July 11. After receiving Dr. Heasley's letter, the district court adjourned sentencing until July 25.

However, rather than attend his July 11 appointment with Dr. Heasley, Arhebamen relocated to Arizona. In Arizona, Arhebamen solicited a letter from Dr. Sorokin also asking Arhebamen be excused from any court proceedings. On July 24, one day before his scheduled sentencing, Dr. Sorokin faxed a letter of excuse to the district court. Just as Arhebamen had misled Dr. Heasley, Arhebamen misled Dr. Sorokin into believing that he was merely being investigated for fraudulent activity, and failed to disclose that he was scheduled to be sentenced the following day.

Arhebamen was convicted of the crime of failure to appear (18 U.S.C. § 3146(b)(2)) at his July 25 sentencing. The district court applied a two-level enhancement under § 5K2.7, finding that "[t]he manipulation of Dr. Heasley and Dr. Sorokin, and the corresponding adjournment of sentencing is an unusual aggravating circumstance that was not adequately considered by the Sentencing Guidelines" (JA 135). The district court concluded that Arhebamen's conduct "resulted in a significant disruption of a Government function (*i.e.*, the timely sentencing of Defendant), and an upwards departure of 2 levels pursuant to U.S.S.G. § 5K2.7 is appropriate" (*id.*).

Section 5K2.7 provides:

> If the defendant's conduct resulted in a significant disruption of a governmental function, the court may increase the sentence above the authorized guideline range to reflect the nature and extent of the disruption and the importance of the governmental function affected. Departure from the guidelines ordinarily would not be justified when the offense of conviction is an offense such as bribery or obstruction of justice; in such cases interference with a governmental function is inherent in the offense, and unless the circumstances are unusual the guidelines will reflect the appropriate punishment for such interference.

There are no Application Notes to this section of the Guidelines. Both parties agree that the underlying offense here -- failure to appear for sentencing -- is one in which "interference with a governmental function is inherent." Therefore, a Guidelines departure under § 5K2.7 is appropriate only if the "circumstances are unusual" such that

the underlying Guidelines sentence does not "reflect the appropriate punishment" for Arhebamen's failure to appear at his July sentencing dates.

In *United States v. Heckman*, 30 F.3d 738 (6th Cir. 1994), this Court affirmed an upward departure under § 5K2.7 where the underlying offense involved a disruption of a government function. In that case, defendant was convicted of filing false documents with the IRS. *Id.* at 740. The defendant indicated in his false filing that he had paid over $1 million to various businesses and individuals. *Id.* The court determined that a § 5K2.7 departure was justified because, in addition to attempting to avoid his own tax liability, defendant "used the IRS to harass numerous persons who had the misfortune of coming into contact with him." *Id.* at 743.

Here, too, the "circumstances are unusual" because Arhebamen did not simply fail to appear for his July 25, 2001 sentencing. Rather, he manipulated the district court to postpone his sentencing twice by obtaining letters from two different doctors under false pretenses. It is beyond dispute that these last-minute delays wasted government time and resources, not to mention the time of the doctors.

In *Heckman*, the court held that the crime of tax fraud "may contemplate the disruption bound to result from income tax evasion but not the disruption resulting from an attempt to use the IRS as a tool of harassment." *Id.* Similarly, here the crime of failure to appear may contemplate disruption bound to result from not appearing for sentencing as required, but not the deceit and manipulation of two doctors in two states as well as court personnel.

I disagree that the § 5K2.7 enhancement is appropriate only where defendant's conduct results in substantial harm. This "no harm, no foul" approach is too narrow. Just because Arhebamen was not entirely successful in his attempts to further delay his sentencing beyond July 25 does not mean that an upward departure under § 5K2.7 is inappropriate.

Additionally, even under the majority's resulting-harm approach, I find the majority has understated the harm here. Government time and resources were wasted

when Arhebamen requested continuances for sentencing based on false pretenses. Furthermore, in the district court's Sentencing Opinion and Order, it noted another kind of harm -- that Arhebamen's misconduct hindered legitimate requests of other criminal defendants and undermined court flexibility in scheduling appearances (JA 136). Such disruptions are harmful to the administration of justice.

### *Failure to Appear (18 U.S.C. § 3146(b)(2)): § 5K2.0 Enhancement*

Arhebamen was convicted of failing to appear at his July 25, 2001 sentencing. In addition to failing to appear, Arhebamen relocated to Arizona, violating the terms of his release. After conviction and before sentencing, Arhebamen sought permission from his pretrial services officer to move to Arizona. The pretrial services officer explicitly denied this request, yet Arhebamen moved anyway. The district court concluded that "[t]his aggravating circumstance, (leaving the Court's jurisdiction) does not appear to have been adequately taken into account by the Sentencing Commission in formulating the Guidelines and, therefore, warrants an upward departure from the Guidelines pursuant to § 5K2.0" (JA 136). The district court imposed a two-level upward departure under § 5K2.0 because it viewed Arhebamen's flight from Michigan as comparable to "a fraudulent scheme in order to avoid law enforcement" (*id.* (*quoting* U.S.S.G. § 2F1.1(b)(6)(A))).

The district court did not err or abuse its discretion in imposing a two-level upward departure, under § 5K2.0, for Arhebamen's move to Arizona in direct defiance of his pretrial services officer. Indeed, under Guideline § 2J1.6, which provides the offense level for the crime of failure to appear, there is no provision accounting for whether a defendant leaves the jurisdiction as part of the crime. Section 5K2.0(a)(2)(B) states that "[a] departure may be warranted in the exceptional case in which there is present a circumstance that the Commission has not yet identified in the guidelines but that nevertheless is relevant to determining the appropriate sentence." Furthermore, this Court has acknowledged that with the exception of a few factors which may never form the basis of a departure, the Guidelines do not "limit the kinds of factors, whether or not

mentioned anywhere else in the guidelines, that could constitute grounds for departure in an unusual case." *United States v. Crouse*, 145 F.3d 786, 789 (6th Cir. 1998).

The majority notes: "[N]othing in the record reflects that Arhebamen relocated in order to avoid law enforcement or regulatory officials or the authority of the court. To the contrary, Arhebamen's wife provided a forwarding address to the pretrial services officer and, as a result, Arhebamen was promptly arrested after he failed to appear." A clever defendant, or the quick response of the U.S. Marshals to arrest a fugitive, are not determinative of whether flight from the jurisdiction constitutes an "exceptional circumstance." The key fact is that a convicted felon, on the eve of sentencing, traveled some 2,000 miles across the country in direct defiance of the terms of his presentence release, thereby breaking the law. His misconduct is not diminished simply because he left a trail of crumbs, someone else turned him in, or because his capture was swift.

In sum, the Guidelines provide district courts the opportunity to apply an upward departure when circumstances exist that were not contemplated by the Commission. The district court found such circumstances, which certainly distinguish this case from the average failure to appear case. The district court did not commit any procedural errors when it applied upward departures under the Guidelines, and did not otherwise abuse its discretion in sentencing Defendant to 152 months imprisonment.

I also find that had the district court elected to increase Arhebamen's Guidelines sentence by varying upward under Section 3553(a), rather than by applying upward departures, this Court's review of the sentence would be far more limited. *See Erpenbeck*, 532 F.3d at 430 ("If the sentence departs from the Guidelines, we must give 'due deference' to the district court's decision that the § 3553(a) factors justify the variance. 'The fact that [this Court] might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court.'") (*quoting Gall*, 128 S. Ct. at 597).

Indeed, the same detailed reasons given by the district court for an upward departure equally  support an upward variance. During the 2006 resentencing, the district court specifically acknowledged that the Guidelines were no longer mandatory

and "[b]ased on the purposes set forth in 18 U.S.C. § 3553(a)(2), and the considerations of § 3553(a)(1), & (3)-(7), the Court imposes upon Defendant a 'total punishment' of a term of imprisonment of 152 months" (JA 146). Therefore, any disagreement over the district court's reasoning for these upward departures would disappear under an upward-variance analysis. *See United States v. Obi*, 542 F.3d 148, 156 (6th Cir. 2008) (harmless error where Guidelines mistake did not affect selection of sentence). A remand is unnecessary if the same sentence can be reimposed as a variance for the same detailed reasons and then upheld on another appeal. *See United States v. Abbas*, 560 F.3d 660, 667 (7th Cir. 2009) ("[T]he recognition that some Guidelines miscalculations can be harmless does not change these basic principles [that judges possess discretion under Section 3553(a)]. It merely removes the pointless step of returning to the district when we are convinced that the sentence the judge imposes will be identical to the one we remanded.").

In this case, I find alternatively that the 152-month sentence is sufficiently justified based upon the 18 U.S.C. § 3553(a) factors. *See Erpenbeck*, 532 F.3d at 441. For this reason too, I would affirm.