**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0769n.06

**Nos. 08-2239 and 08-2250**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | **FILED**<br>**Dec 16, 2010**<br>LEONARD GREEN, Clerk |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| JOSEPH ANTHONY GIGANTI and | ) | COURT FOR THE WESTERN |
| RICARDO JAIMES, | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Defendants-Appellants. | ) | |
| | ) | |

_____

**BEFORE: GIBBONS and COOK, Circuit Judges, and VAN TATENHOVE, District Judge.**[*]

**VAN TATENHOVE, District Judge**. Both Joseph Anthony Giganti and Ricardo Jaimes pled guilty to a single-count Indictment charging them with conspiracy to distribute 100 kilograms or more of marijuana in violation of 18 U.S.C. §§ 846 and 841(a)(1). On appeal, they challenge their sentences. Specifically, Jaimes challenges the district court's application of a three-level enhancement to his base offense level under U.S.S.G. § 3B1.1, based on his role as a manager or supervisor of the offense. Giganti raises two issues. First, he argues that the district court erred by increasing his base offense level two levels under U.S.S.G. § 2D1.1, based on his possession of weapons at his residence. He also contends that the district court committed procedural error by imposing a five-year term of supervised release, above the four-year mandatory term, without

_____

[*]The Honorable Gregory F. Van Tatenhove, United States District Judge for the Eastern District of Kentucky, sitting by designation.

articulating the factors justifying the additional year.  For the reasons set forth below, we affirm the sentences of Jaimes and Giganti.

**I.**

On November 27, 2007, a Grand Jury for the United States District Court for the Western District of Michigan returned an Indictment against Ricardo Jaimes, Joseph Anthony Giganti, Genaro Gerardo Deanda, and Ricky Lee Chalfant.  The Indictment charged the four men with conspiring to distribute 100 kilograms or more of marijuana between August 2005 and November 2007.

The record reveals that in April of 2005, Jaimes and Deanda opened a shipping company, South Texas Shipping Express, in Mission, Texas, as a legitimate business venture.  Shortly thereafter, they began the illegitimate business of shipping marijuana.  The two men made money by overcharging for the packages containing marijuana.

Eventually, Jaimes and Deanda decided to distribute marijuana themselves.  One of their customers was Giganti, an acquaintance of Jaimes.  Giganti established his own customers, and he used others to wire money to Deanda and Jaimes as payment for the shipments of drugs.[1]  He typically sent proceeds to Jaimes and Deanda himself, especially in the beginning.

By March of 2006, Giganti had fallen behind in his payments and owed $16,000 to Jaimes and Deanda, so the two men drove to Michigan to speak with him.  While at his residence, Giganti showed them the numerous weapons he owned.  Indeed, during a later search of his home, detectives

---

[1]It appears Giganti did not have marijuana delivered directly to his residence.  Instead, he had it delivered to addresses and people under his control.

located two pistols and three rifles, along with marijuana paraphernalia and packaging material. Jaimes and Deanda collected approximately $6,000 from Giganti on that trip.

Due to his abuse of cocaine, Jaimes became increasingly unreliable and unpredictable. And by the end of 2006, he was no longer involved in the conspiracy.

It is suspected that Jaimes and Deanda shipped 8,812 pounds of marijuana nationally and received $394,854.36 in drug proceeds during the course of the conspiracy. It is conservatively estimated that Giganti was responsible for distributing 1,417 pounds, or 643 kilograms, of marijuana.

On April 24, 2008, Jaimes pled guilty to the sole count of the Indictment pursuant to a written plea agreement. The United States Probation Office ("USPO") prepared a presentence investigation report ("PSR") which calculated his base offense level at 30. The PSR recommended a three-level enhancement to Jaimes's offense level due to his leadership role in the offense. Specifically, it recommended an enhancement under U.S.S.G. § 3B1.1(b), which applies if the defendant was a manager or supervisor of criminal activity that involved five or more participants or was otherwise extensive. The PSR also recommended a three-level reduction in Jaimes's offense level for his acceptance of responsibility. With a total offense level of 30 and a criminal history category of I, Jaimes's guideline sentencing range was 97 to 121 months.

Jaimes objected to his characterization as a manager or supervisor within the conspiracy. After hearing the parties' arguments at sentencing, the district court overruled the objection, finding that Jaimes's offense level had been correctly calculated by the PSR. The district court then sentenced Jaimes to 97 months in prison followed by five years of supervised release.

Giganti also pled guilty to the Indictment pursuant to a written plea agreement. In the PSR, the USPO calculated his base offense level at 28. As in Jaimes's case, the PSR recommended a three-level enhancement on the basis of Giganti's role as a manager or supervisor within the conspiracy. Additionally, the PSR recommended an enhancement under U.S.S.G. § 2D1.1(b)(1), which directs a two-level increase if a dangerous weapon was possessed. Like Jaimes, Giganti received a three-level acceptance credit. Thus, with a total offense level of 30 and a criminal history category of I, Giganti's guideline sentencing range was also 97 to 121 months. The PSR noted that the district court could sentence Giganti to a minimum supervised release term of four years, or a maximum of five years.

Prior to his sentencing, Giganti objected to the § 2D1.1(b)(1) enhancement. At his sentencing hearing, however, he indicated his desire to withdraw that objection. The district court accepted his withdrawal and noted that the enhancement for possession of a gun applied regardless. Additionally, even though there was no formal objection on the record, the district court decided to make an adjustment to the role in the offense enhancement, imposing a two-level increase rather than the three levels recommended by the PSR. This brought Giganti's total offense level to a 29, with a resulting guideline range of 87 to 108 months. The district court sentenced Giganti to 87 months in prison and five years of supervised release.

**II.**

**A.**

**1.**

Jaimes contends that the district court erred in determining his role in the offense. He maintains that the court incorrectly calculated his Guidelines range by applying a three-level sentencing enhancement pursuant to § 3B1.1 based on Jaimes's leadership role in the conspiracy. This, according to Jaimes, resulted in both a procedurally and substantively unreasonable sentence.

"A district court's determination regarding a defendant's role in the offense is reversible only if clearly erroneous."[2] *United States v. Jeross*, 521 F.3d 562, 579 (6th Cir. 2008) (quoting *United States v. Gates*, 461 F.3d 703, 709 (6th Cir. 2006)); *see also United States v. Ward*, 506 F.3d 468, 476 (6th Cir. 2007). A factual finding is clearly erroneous "when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Lalonde*, 509 F.3d 750, 763 (6th Cir. 2007) (citations and internal quotation marks omitted).

Pursuant to U.S.S.G. § 3B1.1(b), an enhancement of three levels is appropriate if the defendant "was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(b). In making this determination, a court should consider:

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

---

[2]Other panels of this court have noted that the proper standard for reviewing a district court's imposition of a leadership role enhancement under § 3B1.1 "is not altogether clear." *United States v. Vasquez*, 560 F.3d 461, 473 (6th Cir. 2009). To the extent that the appropriate standard remains unresolved, we would reach the same conclusion in this case under a *de novo* review.

*United States v. Hernandez*, 227 F.3d 686, 699-700 (6th Cir. 2000) (quoting U.S.S.G. § 3B1.1 cmt. n.4). These factors, however, "are only designed to provide guidance to the sentencing court, and there is no requirement that each factor be met." *United States v. Green*, 202 F.3d 869, 871 (6th Cir. 2000). Moreover, "[t]o qualify for an adjustment under this section, the defendant must have been the organizer, leader, manager, or supervisor *of one or more other participants*." U.S.S.G. § 3B1.1 cmt. n.2 (emphasis added).

Here, Jaimes contends that the leadership enhancement was not warranted because his involvement was limited and his tenure short. Jaimes notes that he was only involved in the illegal shipment of drugs from the end of 2005 until he was forced out of the business in the middle of 2006. Jaimes thus asserts that the district court erred by applying the three-level enhancement.

At the sentencing hearing, the district court heard argument from the parties regarding the applicability of the three-level enhancement for management or supervision of criminal activity involving five or more participants or when it is otherwise extensive. *See* U.S.S.G. § 3B1.1(b). The court concluded, prior to listing its reasons, that the enhancement was appropriate "based on the undisputed facts of the presentence report." As the court correctly observed, Jaimes and his co-conspirator Genaro Deanda "co-founded a shipping company" and "were both fully involved and co-owners." They "initially arranged and continued to arrange" sources for the marijuana and even found an alternate source when another was deemed to be of poor quality. This business required "considerable coordination" as the conspiracy involved shipping marijuana to at least seventy different customers in thirty different states with approximately 1,200 transactions. Thus, the district

court aptly described this as "an otherwise extensive criminal operation"[3] even if only a portion of those transactions were credited to Jaimes "since he was out by the end of '06."

Jaimes also exercised managerial or supervisory control of the activity by recruiting co-conspirators. The court described how Jaimes and Deanda "cut Giganti out of the distribution chain there and took those people on themselves." The court also referenced a payment dispute during which Jaimes and Deanda traveled to Michigan to collect outstanding debts.

After considering the record, the district court found "more than enough factual basis here to suggest that the role of Mr. Jaimes was certainly manager or supervisor." The court specifically noted Jaimes's role as a co-founder and co-owner of the shipping company used to distribute large quantities of marijuana all over the country. This was an extensive criminal operation which required considerable coordination and for which Jaimes recruited co-conspirators and collected debts. Contrary to Jaimes's argument, his role was not limited and the district court correctly enhanced his sentence pursuant to § 3B1.1(b).

**2.**

Jaimes also challenges both the substantive and procedural reasonableness of his sentence. He contends that his sentence is procedurally unreasonable because the district court erroneously applied the three-level leadership enhancement and did not properly consider the § 3553(a) factors

---

[3]The court further noted that the criminal activity, in addition to being otherwise extensive, involved at least five participants. Those individuals included Jaimes, Deanda, co-defendant Giganti, and the two principal customers, Mr. Chalfant and Mr. Magee.

in calculating the Guidelines. According to Jaimes, the court failed to consider the mitigating factors or any argument that would reduce his sentence below the Guidelines.

As discussed in the preceding section, the district court properly applied the leadership enhancement in this case. Jaimes does not list a single § 3553(a) factor that the court failed to consider. Nor does he provide any further description of which mitigating factors the court allegedly failed to address. Regardless, his conclusory argument is not supported by the record.

In similar fashion, Jaimes maintains that his sentence is also substantively unreasonable because the district court failed to accord proper weight to mitigating evidence under § 3553. Jaimes asserts that he demonstrated that his involvement was limited and the district court failed to consider this factor in sentencing him.

Again, however, Jaimes points to nothing in the record to support his claims. Because the district court correctly applied the § 3B1.1(b) enhancement, finding that Jaimes exercised a managerial or supervisory role in the conspiracy, it would be inconsistent, if not erroneous, for the court to find that his "limited" role was a mitigating factor. All of the evidence in the record that supports the application of the leadership enhancement essentially negates Jaimes's argument that his role was so limited as to mitigate his sentence.

In sum, we find that the district court properly applied the § 3B1.1(b) enhancement. Jaimes's sentence was not procedurally or substantively unreasonable. We therefore affirm his sentence.

**B.**

**1.**

On appeal, Giganti challenges the enhancement to his guideline offense level pursuant to U.S.S.G. § 2D1.1(b)(1), which directs a two-level increase for possession of a dangerous weapon, including a firearm. The government contends, however, that Giganti waived the right to appeal this aspect of his sentence in his plea agreement.

"It is well settled that a defendant in a criminal case may waive his right to appeal his sentence in a valid plea agreement." *United States v. Smith*, 344 F.3d 479, 483 (6th Cir. 2003) (citing *United States v. Fleming*, 239 F.3d 761, 763-64 (6th Cir. 2001)). A plea agreement is constitutionally valid if the defendant entered into the agreement knowingly and voluntarily. *Id.* (citing *Fleming*, 239 F.3d at 764). Whether a defendant waived his right to appeal his sentence in a valid plea agreement is a question this Court reviews *de novo*. *Id.* (citing *United States v. Stubbs*, 279 F.3d 402, 411 (6th Cir. 2002)). "When a defendant waives his right to appeal his sentence in a valid plea agreement, this Court is bound by that agreement and will not review the sentence except in limited circumstances." *Id.* (quoting *Stubbs*, 279 F.3d at 410).

Further, "[p]lea agreements are contractual in nature." *United States v. Wells*, 211 F.3d 988 (6th Cir. 2000). They "are to be enforced according to their terms," with any ambiguities construed against the government. *United States v. Moncivais*, 492 F.3d 652, 662 (6th Cir. 2007). In interpreting a plea agreement, the "determinative factor . . . is not the parties' actual understanding of the terms of the agreement; instead, an agreement must be construed as a reasonable person would interpret its words." *Id.* at 663.

The relevant provision of Giganti's plea agreement reads as follows:

> <u>Waiver of Appeal Rights</u>.  The Defendant understands that the law affords him the right to appeal the sentence imposed.  Acknowledging this, the Defendant knowingly waives the right to appeal a sentence that is within or below the guideline range as determined by the Court at sentencing and the manner in which the sentence was determined on the grounds set forth in 18 U.S.C. § 3742 or any ground whatever.

By the clear terms of this provision, Giganti waived the right to appeal any sentence within or below the determined guideline range and reserved the right to appeal any sentence above the guideline range.  The district court sentenced Giganti to 87 months in prison, at the bottom of the guideline range of 87 to 108 months determined by the court.

Giganti does not argue that his plea agreement is invalid, and the record shows that he entered into the agreement, and particularly the waiver provision of the agreement, knowingly and voluntarily.  During the plea colloquy, for example, the district court called Giganti's attention to the waiver provision, asking him if he understood it.  Giganti responded affirmatively.  Thus, because he made a knowing and voluntary waiver of his right to appeal a sentence within or below the guideline range, and because he received a sentence within the guideline range, Giganti may not appeal his sentence.

Giganti urges the Court to find that when a defendant waives the right to appeal a sentence on the condition that it falls within or below the guideline range, he has not waived the right to appeal an erroneous application of the guidelines.  Giganti cites a First Circuit case, *United States v. McCoy*, 508 F.3d 74 (1st Cir. 2007), in support of this position.

In *McCoy*, the First Circuit considered the following waiver provision:

> Defendant knowingly and voluntarily waives his right to appeal or collaterally challenge . . . [t]he imposition by the District Court of a sentence which does not exceed that being recommended by the U.S. Attorney, as set out in Paragraph 4 and,

> even if the Court rejects one or more positions advocated by the U.S. Attorney or Defendant with regard to the application of the U.S. Sentencing Guidelines.

*Id.* at 77. The court explained that paragraph four of the plea agreement stated that the government would request a sentence within the guideline range. *Id.* at 78. Thus, the agreement precluded the defendant from challenging any sentence that fell within the guideline range. *Id.*

The *McCoy* court found that a waiver forgoing the right to appeal a sentence within the guidelines "does *not* waive the right to appeal an alleged misapplication of the guidelines." *Id.* (emphasis in original) (citing *United States v. Bowden*, 975 F.2d 1080, 1081 n. 1 (4th Cir. 1992)). The court noted that the final clause of the defendant's waiver, stating that the waiver applies "even if the Court rejects one or more positions advocated by the U.S. Attorney or Defendant with regard to the application of the U.S. Sentencing Guidelines," may have been "meant to foreclose review of all of the district judge's decisions as to how to apply the guidelines, whether mistaken or not." *Id.* According to the court, however, "it does not say so clearly; it is not the natural reading of the language; and it is hardly a reading that one would rush to embrace." *Id.* Therefore, construing any ambiguity in the plea agreement against the government, the court determined that the defendant could challenge his within-guideline sentence on the ground that the guideline range had been incorrectly calculated. *Id.*

The waiver provision at issue in *McCoy* is very different from the waiver provision at issue in Giganti's case. Giganti has not merely waived the right to appeal a sentence within the guidelines, he has waived the right to appeal a sentence "within or below the guideline range *as determined by the Court at sentencing . . . .*" Even the *McCoy* court noted that such a waiver provision could

11

foreclose an appeal on the ground that the district court miscalculated the guideline range. *McCoy*, 508 F.3d at 78 n. 4.[4]

Further, Sixth Circuit case law suggests that Giganti's waiver prevents him from challenging the enhancement to his offense level based on his possession of a firearm. In *United States v. Reed*, 187 F.3d 639 (Table), 1999 WL 427165, at *1 (6th Cir. June 15, 1999), the defendant's plea agreement provided that he waived the right to appeal his sentence unless the district court upwardly departed from the applicable guidelines range. On appeal, the defendant argued that the district court erred in applying a two-level increase to his base offense level for obstruction of justice under U.S.S.G. § 3C1.1. *Id.* at *3. The Court found that this issue was unreviewable "[b]ecause Reed executed a valid waiver of his right to appeal his guidelines sentence except in the case of an upward departure, which was not imposed in this case . . . ." *Id.*

Similarly, in *United States v. Coker*, 514 F.3d 562, 573 (6th Cir. 2008), the defendant's "plea agreement waived the right to appeal 'the sentence imposed and the manner in which it was

---

[4]Specifically, this footnote reads as follows:

Broader appeal waivers, which could preclude the type of challenge McCoy attempts here, are not difficult to draft. *E.g., United States v. Moyer*, 247 Fed. Appx. 996, 997, 2007 WL 2733691, at *1, 2007 U.S. App. LEXIS 22225, at *2 (10th Cir. Sept. 17, 2007) (waiver reserved right to appeal "a sentence *above* the high end of the guideline range *as determined by the district court at sentencing*" (second emphasis added)); *United States v. Anglin*, 215 F.3d 1064, 1066 (9th Cir. 2000) (defendant waived right to appeal "on any ground whatever" unless "the Court in imposing a sentence departs . . . upward from the guideline range *determined by the Court to be applicable to the Defendant*" (emphasis added)).

*McCoy*, 508 F.3d at 78 n. 4.

determined' unless the court 'depart[ed] upwards' from the sentencing guidelines." The defendant attempted to get around this waiver by arguing that the district court departed upwards by adjusting or enhancing her base offense level several levels pursuant to U.S.S.G. § 2C1.1. *Id.* The Court, however, distinguished "upward adjustments" or "sentence enhancements" from "upward departures." *Id.* According to the Court, "'adjustments' are applied first to calculate a defendant's guideline range, while 'departures' are given only at the end of the sentencing process and after all adjustments have been applied. An 'upward departure' is a sentence greater than a sentence that could be imposed under the applicable guidelines range, while 'adjustments' are factored into the guidelines range." *Id.* (internal citations and quotation marks omitted). The Court then found that "a defendant who waives the right to challenge her sentence unless the court 'departs upward' cannot challenge the district court's calculation of sentence enhancements." *Id.* (citations omitted).

Giganti argues that the probation officer, a third-party objective reader, interpreted his waiver provision to mean that Giganti retained the right to appeal an alleged error in the calculation of his guideline range. According to Giganti, this suggests that the waiver language in his plea agreement is ambiguous. In making this argument, Giganti points the Court to his PSR, which states that he "waive[d] his right to appeal any sentence within or below the guideline range determined by the Court, except on the grounds that the Court incorrectly determined his guideline range at sentencing."

As noted by the government, the plea agreement of Giganti's co-defendant Ricardo Jaimes contains the following waiver provision:

> [T]he Defendant knowingly waives the right to appeal a sentence that is within or below the guideline range as determined by the Court at sentencing and the manner in which the sentence was determined on the grounds set forth in 18 U.S.C. § 3742 or any ground whatever, in exchange for the concessions made by the United States Attorney's Office in this plea agreement, *except that the Defendant may appeal on grounds, preserved at sentencing, that the Court incorrectly determined the guideline range*.

Thus, as the government contends, it appears likely that the probation officer included the "except clause" language in Giganti's report in error as the result of cutting and pasting from his co-defendant's PSR.

Regardless, the waiver language in Giganti's plea agreement is not ambiguous. Giganti waived the right to appeal a sentence "within or below the guideline range as determined by the Court at sentencing." At sentencing, the district court determined Giganti's guideline range and sentenced him within it. Accordingly, under the clear terms of Giganti's plea agreement, he cannot appeal the U.S.S.G. § 2D1.1 enhancement.

**2.**

In addition to his argument that the district court erred by enhancing his offense level for possession of a weapon pursuant to U.S.S.G. § 2D1.1(b)(1), Giganti argues that the district court committed procedural error by imposing a five-year term of supervised release, above the mandatory term of four years, without articulating the factors justifying the additional year. In his brief, Giganti does not address whether he waived the right to appeal his term of supervised release when he waived the right to appeal a within or below guidelines sentence. Even assuming he did not waive this right, his argument fails.

14

Nos. 08-2239 and 08-2250
*United States v. Giganti and Jaimes*

A district court's sentencing determination is reviewed for reasonableness using a deferential, abuse-of-discretion standard. *United States v. Bolds*, 511 F.3d 568, 578 (6th Cir. 2007); *Gall v. United States*, 552 U.S. 38, 51 (2007). A sentence must be both procedurally and substantively reasonable. *Bolds*, 511 F.3d at 578; *Gall*, 552 U.S. at 51. "A district court necessarily abuses its sentencing discretion if it 'commit[s] [a] significant procedural error, such as . . . failing to consider the § 3553(a) factors . . . or failing to adequately explain the chosen sentence . . . .'" *Bolds*, 511 F.3d at 579 (quoting *Gall*, 552 U.S. at 51).

Here, Giganti did not object to the district court's imposition of a five-year term of supervised release. Accordingly, this Court reviews the district court's decision for plain error. *See United States v. Berry*, 565 F.3d 332, 340 (6th Cir. 2009); Fed. R. Crim. P. 52(b). In order to demonstrate plain error, Giganti must show: "(1) error; (2) that was obvious or clear; (3) that affected defendant's substantial rights; and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings.'" *Berry*, 565 F.3d at 340 (quoting *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc)).

By statute, the district court was required to sentence Giganti to a supervised release term of at least four years. 21 U.S.C. § 841(b)(1)(B). The maximum term of incarceration for Giganti's offense of conviction is forty years. *Id.* Accordingly, Giganti was convicted of a Class B felony. *See* 18 U.S.C. § 3559(a)(2). The authorized term of supervised release for a Class B felony is not more than five years. 18 U.S.C. § 3583(b)(1). Thus, the district court had the option of sentencing Giganti to a four- or five-year term of supervised release.

15

Pursuant to 18 U.S.C. § 3583(c), in determining the length and conditions of supervised release, the district court must consider several of the factors set forth in 18 U.S.C. § 3553(a). Specifically, the Court must consider: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to afford adequate deterrence to criminal conduct; (3) the need to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guideline range; (6) any policy statements issued by the Sentencing Commission; (7) the need to avoid unwarranted sentencing disparities among similarly situated defendants; and (8) the need to provide restitution to any victims. *See* 18 U.S.C. §§ 3583(c) and 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7).

Giganti cites *United States v. O'Georgia*, 569 F.3d 281 (6th Cir. 2009), in support of his position that the district court failed to articulate its reasons for imposing a five-year term of supervised release as directed by 18 U.S.C. §§ 3583(c) and 3553(a). *O'Georgia*, however, does not help his case.

The defendant in *O'Georgia* had been sentenced to 21 months in prison and to a one-year term of supervised release following his guilty plea to tax fraud. *O'Georgia*, 569 F.3d at 288. After the defendant completed his custodial sentence, but before he completed his term of supervised release, the case was remanded for resentencing. *Id.* On remand, the district court failed to recognize that the defendant's "completion of his custodial sentence rendered that portion moot at the resentencing stage." *Id.* at 289. Instead, the district court reimposed the defendant's 21-month sentence and the same one-year term of supervised release. *Id.*

16

On appeal, the *O'Georgia* Court agreed with the defendant that "the supervised-release term was summarily imposed without an adequate explanation." *Id.* Significantly, however, the Court explained that its "conclusion regarding this issue [was] not based upon the district court's failure to repeat its § 3553(a) analysis with respect to the supervised-release term." *Id.* According to the Court, "Such repetition would serve no useful purpose in the ordinary case." *Id.* (citation omitted). Instead, the Court stated that because "the district court erred when it reimposed a custodial sentence that had already been served," it would "decline to transfer the district court's perfunctory § 3553(a) analysis with respect to the moot custodial sentence to its analysis-free reimposition of the supervised-release term." *Id.*

Thus, in the typical case without *O'Georgia*'s unusual facts, it *is* appropriate to transfer a district court's § 3553 analysis with respect to a defendant's custodial sentence to the imposition of a term of supervised release. Indeed, requiring a district court to repeat the § 3553(a) analysis "would serve no useful purpose." *Id.*

Here, the district court properly considered the § 3553(a) factors in imposing Giganti's 87-month sentence, and Giganti makes no argument to the contrary. Additionally, with respect to Giganti's supervised release term, the district court stated as follows:

> In terms of supervised release, the guidelines here would be four or five years. I'm going to intend to impose five years. That will allow us to find out whether in fact Mr. Giganti is able to apply his considerable energies in positive directions, as we all hope he does. So five years allows him, if everything is going well, to be tracking back into the community, getting back in with his family and rebuilding his life.

17

Accordingly, the district court did not fail to articulate its reasons for sentencing Giganti to five years of supervision.

Giganti also "contends that his exemplary record of clean drug tests and good behavior during the extended pre-incarceration bond period should have been taken into consideration in the court's determination to impose a period of supervised release in excess of the minimum required by statute." He claims that "[t]here is no indication in the record of sentencing that the district court was even aware of defendant's good conduct in this respect." The record also shows that neither Giganti nor his attorney asked the district court to consider his history of clean drug tests and good behavior while on pretrial release. This Court recognizes that "[i]t is 'not incumbent on the District Judge to raise every conceivably relevant issue on his own initiative.'" *United States v. Petrus*, 588 F.3d 347, 352 (6th Cir. 2009) (quoting *Gall*, 552 U.S. at 54). Thus, having adequately addressed the § 3553(a) factors and explained the reasons for the sentence, the district court committed no error, and certainly no plain error, in sentencing Giganti to five years of supervised release.

**III.**

For the foregoing reasons, the sentences of Jaimes and Giganti are affirmed.