<u>NOT RECOMMENDED FOR FULL-TEXT PUBLICATION</u>
File Name: 19a0300n.06

Case Nos. 17-3862/3877/3901/4076

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

<table>
<tr><td></td><td></td><td rowspan="3">
**FILED**<br>Jun 11, 2019<br>DEBORAH S. HUNT, Clerk
</td></tr>
</table>

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
|  | ) | |
| Plaintiff-Appellee, | ) | |
|  | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
|  | ) | THE NORTHERN DISTRICT OF |
| CARL D. PENNY; ADOLFO MAGADAN; | ) | OHIO |
| RENEE SERNA; MARTY MCCAULLEY, | ) | |
|  | ) | |
| Defendants-Appellants. | ) | |

BEFORE: SILER, COOK, and BUSH, Circuit Judges.

COOK, Circuit Judge. These consolidated appeals arise from a drug trafficking conspiracy to which all appellants pleaded guilty. Carl D. Penny, Adolfo Magadan, Renee Serna, and Marty McCaulley challenge their sentences as procedurally and substantively infirm. Because the district court abused its discretion when it denied Penny safety valve consideration, employed the incorrect legal standard to deny Magadan a minor participant reduction, and clearly erred when it imposed on McCaulley a life term of supervised release, we vacate in part and remand for resentencing. We affirm Serna's sentence.

## I. BACKGROUND

This case involves a large-scale conspiracy to distribute cocaine. Adolfo Magadan, a tractor-trailer driver, transported the drugs; Marty McCaulley funded the scheme; and Renee Serna

worked as their go-between.

In February 2017, Serna picked up six kilograms of cocaine from Magadan and delivered them to McCaulley's apartment. There, McCaulley, Serna, and Carl Penny weighed the drugs before parting ways. Unbeknownst to the coconspirators, law enforcement agents had been watching them for hours, observing Serna, Magadan, and McCaulley trading duffel bags of drugs and money.

After the meeting, Penny dropped Serna off at a hotel, where Penny watched DEA agents arrest Serna. Panicking, Penny hurried home, but agents caught him too. A post-arrest search of Penny produced multiple cell phones, digital scales with cocaine residue, nineteen rounds of ammunition, more than $100,000 in cash, and other drug paraphernalia. Agents also stopped Magadan on his way from Cleveland to Chicago with another 7.9 kilograms of cocaine and $169,000 in his truck.

By the time agents arrested McCaulley, he had distributed one of the six kilograms of cocaine to another coconspirator, Paul Cramer. Agents searched McCaulley's apartment and found the remaining kilograms, sixteen cell phones, ammunition, and other drug paraphernalia.

A federal grand jury charged Penny, Magadan, Serna, and McCaulley, among others, in a seven-count, six-defendant indictment. All four appellants pleaded guilty to Count 1: conspiracy to possess with intent to distribute approximately six kilograms of cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A). Magadan, Serna, and McCaulley also entered guilty pleas to Count 2: possession with intent to distribute cocaine, 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 18 U.S.C. § 2. Magadan pleaded guilty to another count for possessing cocaine with intent to distribute for the additional 7.9 kilograms of cocaine destined for Chicago—Count 3, and

McCaulley pleaded guilty to possessing a firearm as a felon—Count 7, 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

The court sentenced each defendant separately. Penny, Magadan, Serna, and McCaulley raise distinct issues on appeal.

## II. PENNY'S SENTENCE

Penny appeals his ninety-seven-month sentence and $100,000 fine, asserting both procedural and substantive error.

### A. Safety Valve Application

We first address Penny's claim that the district court committed procedural error when it denied him the benefit of USSG § 5C1.2(a), the safety valve provision permitting the court to "impose a sentence . . . without regard to any statutory minimum sentence . . . ." 18 U.S.C. § 3553(f); USSG § 5C1.2(a).

To be eligible for a safety valve sentence, Penny must satisfy five requirements by a preponderance of the evidence. *United States v. Haynes*, 468 F.3d 422, 427 (6th Cir. 2006). The only requirement at issue in this appeal concerns whether Penny "possess[ed] a firearm or other dangerous weapon (or induce[d] another participant to do so) in connection with the offense." 18 U.S.C. § 3553(f)(2).

At sentencing, the government conceded that "the facts that we have do not support putting a firearm in Mr. Penny's possession." Nevertheless, the district court found that possession of a firearm disqualified Penny from consideration for a safety valve sentence. The court managed this by inferring possession of a firearm from the nineteen rounds of ammunition agents recovered from Penny. Questioning the government's choice even to recommend safety valve relief, the court mused:

[P]eople don't have ammunition along with their tools of their trade in the drug trade unless they either have a gun, had a gun, have a gun stashed somewhere, are using a gun. Makes no sense whatsoever you have .44 caliber ammunition and then you want me to at least make the inference [Penny] didn't possess a firearm.

R.120, PageID 991–92. The record of the proceeding confirms that the court viewed ammunition, found near "other accoutrements of the drug trade," as support for finding either that Penny possessed a firearm or that the ammunition itself qualified as a dangerous weapon. This, despite acknowledging the dearth of precedent supporting either of these rationales: "And I've looked at some case law. And it appears to be silent as to whether the possession of . . . the ammunition, would give rise to the disqualification for safety valve." *Id.* at PageID 992–93.

Unsurprisingly, we reach the opposite conclusion. True, actual or constructive possession of a firearm can serve to disqualify a defendant from safety valve consideration. *See United States v. Stewart*, 306 F.3d 295, 327 n.19 (6th Cir. 2002) ("[W]here a defendant had actual or constructive possession over a *firearm* such that an increase to his or her base offense level under § 2D1.1 is appropriate, such possession 'defeats application of the safety valve.'") (emphasis added) (citation omitted). But our precedent demands evidence of a firearm—not evidence of ammunition for a firearm. Here, as acknowledged by the government at the outset of the proceedings, a thorough search of Penny's person, apartment, and vehicle produced no firearm.

The same sort of thinking had the district court considering the ammunition itself to be a "dangerous weapon" within the meaning of Guidelines § 1B1.1:

[T]he next question becomes is a bullet a dangerous weapon?

And I've looked at 1B1.1 which provides definitions. And I've looked at some case law. And it appears to be silent as to whether the possession of the bullets would give rise, or the ammunition, would give rise to the disqualification for safety valve.

. . .

> In the alternative, even if the firearm itself, the possession of the gun doesn't give rise to the inference of the possession of the firearm, the possession of the ammunition, or the ammunition, I should say, at least in my view, could be treated as a dangerous weapon.
>
> It's a projectile which is designed to inflict harm. Typically a .44 magnum is certainly a large-scale -- a large magazine. And the volume of the -- the sheer number of the rounds of ammunition, 19 rounds, is such that I believe it would qualify as a dangerous weapon.
>
> And so for those reasons I will not provide two levels for the so-called safety valve.

R. 120, PageID 992, 994.

Both parties agree that neither the Guidelines nor any of our cases supports such a conclusion. Without a weapon, the ammunition fails the definition the court invoked: "(i) an instrument capable of inflicting death or serious bodily injury; or (ii) an object that is not an instrument capable of inflicting death or serious injury but" closely resembles one. USSG § 1B1.1, Application Note 1(E). This record includes no evidence that Penny used the ammunition, much less brandished it as a dangerous weapon. Plainly, ammunition is incapable of inflicting death or serious injury without a firearm.

These misconceptions employed by the district court to deny Penny safety valve consideration amount to an abuse of discretion warranting resentencing.

**B.  Reliance on Codefendant's Confidential Proffer**

Penny next contends that the court improperly drew information from his codefendant's confidential proffer to impose an upward variance. This being the first time Penny presents this argument, we review for plain error. *United States v. Vonner*, 516 F.3d 382, 391–92 (6th Cir. 2008) (en banc). To prevail, Penny must persuade us that the district court erred in an obvious fashion that affected his substantial rights and seriously undermined the fairness, integrity, or public reputation of his judicial proceedings. *United States v. Olano*, 507 U.S. 725, 736 (1993).

At sentencing, the court did consider information "from Mr. Cramer's proffer which outline[d] and assist[ed] the court in deciding Mr. Penny's role [and] which is much like the government appears to set forth." R. 120, PageID 993. That information specifically "tie[d] in and describe[d] Mr. Penny's direct involvement with individuals in Mexico in bringing cocaine into our country and his travels to Mexico to bring these large multiple kilos of drugs into our country." R. 120, PageID 1009. The court referenced Cramer's proffer repeatedly: when it declined to apply the safety valve, when it granted Penny a substantial assistance reduction, and again when it decided to vary upward after considering the nature and circumstances of Penny's offense. But because the court never summarized the information in Cramer's proffer for him, Penny contends that the court denied him a "reasonable opportunity to comment on that information."

Penny couches his argument in terms of disclosures required to be made to him or his counsel by Federal Rule of Criminal Procedure 32(i)(1)(B). Without "impos[ing] a categorical requirement of *prior* notice of the court's intent to vary based on information not contained in the presentence report," Rule 32(i)(1)(B) "clearly requires the sentencing court to use a procedure that affords the defendant a reasonable opportunity to respond." *United States v. Coppenger*, 775 F.3d 799, 804 (6th Cir. 2015) (vacating a sentence because the district court "undeniably placed heavy, if not exclusive, reliance" on confidential information outside of the presentence report to justify a twenty-three-month variance). Courts grant relief when a defendant "demonstrates that the facts or issues on which the district court relied to impose a variance came as a surprise and that his or her presentation to the court was prejudiced by the surprise." *Id.*

Penny demonstrates surprise, as nothing in his presentence report signaled that the court would consider "direct involvement" with Mexican traffickers or "travels to Mexico"—"specific[,]

detailed information not disclosed to the defendant," *id.* at 805, and relied upon to vary upward. The court relied on confidential information in Cramer's proffer to justify harsher sentencing at the expense of Penny's "right to review other information relied on by a court at sentencing." *United States v. Hamad*, 495 F.3d 241, 245 (6th Cir. 2007).

But Penny presents no argument to explain how this surprise regarding the Mexico aspect of his transactions prejudiced him. Specifically, he never suggests what approach he would have taken to challenge the court's view of his role in the conspiracy once armed with this information. *See United States v. Rossi*, 422 F. App'x 425, 433 (6th Cir. 2011) (denying relief because the defendant did not demonstrate what he would have done differently had he been given an adequate opportunity to confront and debate the relevant issues). Recall that Penny failed to object when the court announced it would rely on Cramer's proffer. To now contend that the court's consideration of the confidential proffer left him "completely unable to formulate an appropriate argument in response" leaves this court without a basis to find that error in this regard satisfies the plain error standard.

## C. Relying on Policy Grounds to Vary Upward

Before the hearing, the court announced it was considering an upward variance from the Guidelines and provided counsel a copy of an article with statistics from the county medical examiner on cocaine-related deaths in 2016. When proceedings resumed, the court linked "the consequences of [Penny's] behavior" to the sharp increase in cocaine-related deaths. R. 120, PageID 1011. Without attributing any specific overdose death to Penny, the court found "a long sentence" necessary "to reflect the seriousness of the offense and the damage that's being done." R. 120, PageID 1011–13. Invoking its discretion under 18 U.S.C. § 3553(a), the court varied

upward by three levels, imposing a within-Guidelines sentence of 97-months' imprisonment. Penny's counsel objected, arguing that none of the overdose deaths were attributable to Penny.

Penny now contends that the district court imposed a substantively unreasonable sentence in giving undue weight to the medical examiner's statistics in its consideration of the 18 U.S.C. § 3553 factors. We review his challenge for abuse of discretion. A sentence is substantively unreasonable when the district court selects the sentence arbitrarily, relies on impermissible factors, fails to consider pertinent § 3553(a) factors, or gives unreasonable weight to any pertinent factor. *United States v. Jones*, 489 F.3d 243, 252 (6th Cir. 2007).

On this record, we find the district court acted within its discretion in considering cocaine-overdose deaths in the county where Penny conspired to sell cocaine together with the seriousness of his offense conduct. In *United States v. Hubbard*, 744 F. App'x 273, 276 (6th Cir. 2018), we upheld this judge's using such statistics as grounds for varying upward. The court "had discretion to vary from the guidelines on policy grounds" and could "partially rely upon the need to protect the public from further crimes of the defendant . . . in light of the community's serious drug epidemic." *Id.* (citation omitted). Same story with this same judge in a third case, *United States v. Robinson*, 892 F.3d 209, 215 (6th Cir. 2018). As in those cases, we find the court's consideration of the cocaine-overdose data substantively sound.

### D. Fine

In addition to Penny's custodial sentence, the district court imposed a $100,000 fine. Penny argues error in that the court did not make factual findings on the record concerning his ability to

pay. He did not object to the fine at sentencing, so we review his within-Guidelines fine for plain error. *United States v. Blackwell*, 459 F.3d 739, 770–71 (6th Cir. 2006).

A district court must impose a fine within the Guidelines range unless a defendant establishes his inability to pay any fine. USSG § 5E1.2(a), (f). In assessing a defendant's ability to pay, a court considers several statutory factors, including the defendant's income, earning capacity, and financial resources. 18 U.S.C. § 3572(a); USSG § 5E1.2(d).

After considering each of the § 3553(a) factors for Penny's custodial sentence, the court stated:

> [T]here will be a fine. This defendant has over $300,000 in assets, and a substantial fine is also warranted so that we have – again, we will make sure the monies can be used, perhaps, hopefully by the government to deter others.
>
> His total assets are $313,000. His net worth is $304,000.
>
> The advisory guideline calculation counsels, for guidelines purpose, the provisions of a fine are $20,000 to $10 million.
>
> He has accumulated a substantial sum of money. And so I don't misstate it, in his accounts – I say the net worth is $300,000.
>
> . . .
>
> The fine in this case will be $100,000. It's a large fine. It's appropriate because of, again, the kind of drug trafficking this defendant engaged in. He has the wherewithal to pay it. He has the assets to pay it. He had $100,000 in drug proceeds with him at the time this all occurred. So that gives you an idea of how much money was coming and going and how much he was earning in the drug trade.

R. 120, PageID 1014–15.

Though it did not explicitly invoke any statutory factors before fining Penny, the court's analysis adequately supports its exercise of discretion. *See United States v. Tosca*, 18 F.3d 1352, 1355 (6th Cir. 1994) (finding the district court satisfied § 3572(a), despite not making express

findings of fact, where it could be fairly inferred that it considered the statutory factors in imposing the fine). Penny fails to demonstrate that the court plainly erred.

To the extent Penny argues that his sentence is substantively unreasonable because his co-conspirators' sentences did not include fines, this argument also fails. The district court was not required to consider sentencing disparities between co-defendants. *See United States v. Mitchell*, 681 F.3d 867, 883 (6th Cir. 2012).

### III. MAGADAN'S SENTENCE

Magadan, the tractor-trailer driver, challenges only the procedural reasonableness of his seventy-one-month sentence. He contends that the district court erred in failing to grant him an adjustment for a mitigating role in the conspiracy under USSG § 3B1.2. Because Magadan objected to the court's reasoning during sentencing, we review the court's denial of the minor participant reduction for abuse of discretion. *See Gall v. United States*, 552 U.S. 38, 51 (2007).

Section 3B1.2 authorizes a sentencing court to reduce a defendant's offense level by two if he was a "minor participant," defined as someone "less culpable than most other participants in the criminal activity, but whose role could not be described as minimal." USSG § 3B1.2(b), Application Note 5. Magadan's plea agreement and presentence report both included the two-level minor-role reduction, but the district court declined to adopt that recommendation because it considered Magadan a "very, very important cog in the system." Magadan was "essential"—"[w]ithout him moving the goods, then they would not be on the streets of Cleveland." More generally, the court did not "believe [the minor participant reduction] applies at all in this case or in the case of these large-scale drug couriers."

For this, the district court relied on language from our decision in *United States v. Skinner*, 690 F.3d 772 (6th Cir. 2012), which held "[a] defendant who plays a lesser role in a criminal

scheme may nonetheless fail to qualify as a minor participant if his role was indispensable or critical to the success of the scheme, or if his importance to the overall scheme was such as to justify his sentence." *Id.* at 783-84 (quoting *United States v. Salgado*, 250 F.3d 438, 458 (6th Cir. 2001)). Applying *Skinner*, the court found "[Magadan's] role here, of course, is essential. He facilitated, in the words of *Skinner*, the transportation of vast amounts of" cocaine and "[t]he conspiracy would not have been successful without the participation of the driver."

But the district court failed to review amendments to § 3B1.2's Application Notes, or our later cases disavowing *Skinner*'s logic, and therefore employed an erroneous legal standard. The amendment to § 3B1.2's notes clarify that "a finding that the defendant was essential to the offense does not alter the requirement, expressed in Note 3(A), that the court must assess the defendant's culpability relative to the average participant in the offense." U.S. Sentencing Guidelines Manual, suppl. to App. C, amend. 794 at 114-17 (2015). Application Note 3(C) confirms that "perform[ing] an essential or indispensable role in the criminal activity is not determinative" and that "[s]uch a defendant may receive an adjustment under this guideline if he or she is substantially less culpable than the average participant." *Id.* And the Sentencing Commission specifically referenced *Skinner* as an example of a case misconstruing the guideline as inapplicable where the defendant's conduct was central to the commission of the crime. *Id.* at 116.

In light of these changes, this court has disavowed *Skinner*'s reasoning and instead defers to the Sentencing Guidelines application notes. *United States v. Hernandez-Fierrosi*, 453 F.3d 309, 313 (6th Cir. 2006). Another example of sentencing error stemming from *Skinner* occurred in *United States v. Ednie*, 707 F. App'x 366, 371–72 (6th Cir. 2017). There, we found legal error requiring resentencing when a district court declined to apply the minor-role reduction because the defendant played a "vital" role in the conspiracy. *Id.* at 371. That reasoning employed "precisely

the analysis the Commission sought to end with [the] Amendment." *Id.* The panel focused on the absence of evidence that the court reviewed the non-exhaustive list of factors under Application Note 3(C).

Here, too, the record shows that the court incorrectly found Magadan ineligible for treatment as a minor participant because he performed an "essential" role in the conspiracy by driving the drugs to Ohio. The government presses the feature of the court considering Magadan's culpability relative to other members of the conspiracy because Magadan admitted to transporting the drugs into Ohio with plans for a second delivery in Chicago. But the court referenced these facts only to confirm that Magadan, like all mules and couriers, completed an essential function for the drug trafficking conspiracy. This argument would be more convincing had the government been able to point to the court weighing whether Magadan was substantially less culpable than the average participant, or the five factors intended to guide the determination. *See United States v. Daneshvar*, No. 18-1101, 2019 WL 2297455, at \*19 (6th Cir. Apr. 29, 2019) ("In determining whether [the defendant] was 'less culpable than most other participants' . . . .we turn to the U.S.S.G. advisory committee notes to § 3B1.2, which provides a non-exhaustive list of factors for a court's consideration."). Instead, the district court overruled Magadan's objection because his role was "essential." That's legal error requiring resentencing. *See United States v. Kaminski*, 501 F.3d 655, 672–73 (6th Cir. 2007) (vacating sentence and remanding for resentencing because district court enhanced defendant's offense level in contravention of application note).

We therefore vacate Magadan's sentence and remand for resentencing for the district court to consider Magadan's relative culpability using the five factors in Application Note 3(C).

#### IV.  SERNA'S SENTENCE

Serna alleges that the court violated his Sixth and Fourteenth Amendment rights when it varied upward and imposed a seventy-one-month sentence.  Like Penny, Serna takes issue with the court's use of information his codefendant proffered and an article reporting increased cocaine-overdose death numbers.  But Serna does not argue that the court imposed an unreasonable sentence because that information was never disclosed to him.  Instead, he argues the court performed unconstitutional factfinding when it drew on facts that a jury did not find beyond a reasonable doubt.  This claim too, forfeited at sentencing, gets plain error review.  *See Vonner*, 516 F.3d at 391–92.

As when sentencing Penny, the court relied on the proffers of Serna's coconspirators and the article about cocaine related overdose deaths, characterizing Serna's role as "much, much more than a mule" in an international drug trafficking conspiracy.  Responding to argument in favor of a minor participant reduction, the court warned Serna's counsel not to "paint him in a way which is completely contrary to what we know about his role, not from his proffers, but from proffers and statements made by others."  R. 130, PageID 1123.

Serna relies on *Apprendi v. New Jersey*'s requirement that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. 466, 490 (2000).  But the Court has since clarified that its holding applies only to factual findings that enhance mandatory minimum sentences—not factual findings that influence judicial discretion.  *Alleyne v. United States*, 570 U.S. 99, 116 (2013).

Here, the district court's consideration of Serna's codefendant's proffer and the rate of cocaine-overdose deaths did not affect his maximum possible sentence—life imprisonment—

obviating his claims under the Sixth and Fourteenth Amendments. The court calculated Serna's Guidelines range to be 37 to 46-months, and a sentence within that range, in the court's view, would not reflect the seriousness of the drug trafficking conspiracy or adequately address deterrence. Thus, the court varied upward two levels, finding 57 to 71-months as a more appropriate Guidelines range given Serna's role in the conspiracy and its effect on the community.

Finding no error, we affirm Serna's sentence.

## V.  MCCAULLEY'S SENTENCE

The court sentenced McCaulley to 200 months' imprisonment on the conspiracy count and a concurrent 120-month imprisonment term on the felon-in-possession count. The court also imposed a life term of supervised release. McCaulley alleges procedural error, arguing that the court (1) failed to adequately explain the length of his supervised release term in light of the statutory factors, and (2) relied on an impermissible factor: the government's decision not to file an information that would have subjected McCaulley to a twenty-year mandatory minimum sentence based on his prior felony drug convictions. He also contends that the court erred by imposing a sentence exceeding the advisory Guidelines range calculated in his presentence report, arguing that his plea agreement bound the court to impose a shorter sentence.

### A.  Lifetime Supervised Release

McCaulley contends that the district court selected a life term of supervised release without adequate justification. He did not object below to the length of term, so we limit our review to plain error. *See Vonner*, 516 F.3d at 391–92.

In determining the procedural reasonableness of McCaulley's term of supervised release, we consider "whether the district court adequately stated in open court at the time of sentencing its rationale for mandating" supervision. *United States v. Brogdon*, 503 F.3d 555, 563 (6th Cir.

2007) (citation omitted). The reasons justifying supervised release commonly overlap with the facts supporting the defendant's custodial sentence. 18 U.S.C. § 3583(c) (mandating that district courts consider several factors set forth in § 3553(a) when deciding term of supervised release). Thus, if the district court addresses these facts elsewhere on the record, we do not require it to review these factors twice. We look only for some explanation about why the factors justify the term of supervised release it imposes. *United States v. Inman*, 666 F.3d 1001, 1004 (6th Cir. 2012); *United States v. Giganti*, 405 F. App'x 31, 40 (6th Cir. 2010). "Failing to do so warrants reversal, even under plain-error review." *United States v. Bunkley*, 732 F. App'x 388, 395 (6th Cir. 2018); *see also United States v. Emmons*, 524 F. App'x 995, 1000 (6th Cir. 2013).

The court never explained the choice of a life term, noting only that, by supervising McCaulley for life, "we will know if he does return to the drug trafficking trade, there will be a consequence. He'll return to Federal Court where the sentencing will be lengthy." R. 151, PageID 1279–80. Our precedent requires more. *See, e.g.*, *Inman*, 666 F.3d at 1004, 1007; *Bunkley*, 732 F. App'x at 395; *Emmons*, 524 F. App'x at 1000. We vacate McCaulley's sentence and remand for the district court to resentence and properly explain any term of supervised release imposed. *See Inman*, 666 F.3d at 1004, 1007.

### B. Guidelines Range Calculation

McCaulley also alleges that the court failed to properly calculate his advisory Guidelines range. Though true that a "sentence is procedurally unreasonable where a district court fails to calculate or improperly calculates the Guidelines range," *United States v. Hall*, 632 F.3d 331, 335 (6th Cir. 2011), the district court got it right.

At the start of proceedings, the court announced that McCaulley's offense level of twenty-nine and category IV criminal history yielded a 121 to 151-month Guidelines range, as set forth in

the PSR. Yet later, the court stated that it would start calculating from a lower, 84 to 105-month range. McCaulley contends that because the district court announced these two different Guidelines range calculations as the "starting point and initial benchmark," the district court failed to properly calculate the applicable Guidelines range.

The record supports just the opposite and resolves the discrepancy McCaulley now sees as error. When the court raised the specter of an upward variance to account for McCaulley's prior drug trafficking convictions, the government requested a sidebar where it moved for a four-level substantial-assistance downward departure and explained its grounds. The court granted the government's request and after resuming proceedings in open court, announced its lower Guidelines range calculation of 84 to 105-months, reflecting McCaulley's adjusted offense level of twenty-five. As the record confirms, the district court properly recognized the applicable Guidelines range and, thus, did not err in this regard.

### C. 21 U.S.C. § 851 Information

McCaulley also claims that the court imposed a substantively unreasonable sentence by relying on an impermissible factor: the government's decision not to file an information under 21 U.S.C. § 851, which would have established McCaulley's prior drug convictions and subjected him to a 20-year mandatory minimum sentence.

Section 851 provides that increases in sentences premised on prior felony drug convictions may not be imposed unless "the United States Attorney files an information . . . stating the previous convictions relied upon." 21 U.S.C. § 851(a)(1). The court acknowledged the government's decision not to file for the enhancement just before varying upward, stating:

> This case would have been, but for the parties' plea agreement, should have been, at least in my view, should have been a mandatory 20 years. The 851 would have brought him a minimum 20 years to life. Minimum.

> I can't get into plea negotiations. That's between the government and the defendant. But I do have the discretion and the authority to impose the kind of sentence that will deter Mr. McCaulley, make certain he does not come back to the community and begin to sell drugs because that's where he will be. He has continued, even after long periods of incarceration, to come right back in our community. And he is a danger, serious danger, to the safety, the health, the well-being of our community.
>
> So having said all those things, I'm cognizant of the fact the Court's upward variance is going to be substantial. I'll note that for the record.
>
> But for all the reasons that I've just stated, this defendant must be removed from society for as long a period of time as reasonable to make certain he doesn't continue on.

R. 151, PageID 1278–79.

McCaulley contends that the court unfairly relied on the government's omission in its consideration of the § 3553(a) factors and to justify an upward variance. True, § 851 gives the government "sole and unreviewable discretion" to seek an enhanced sentence. *See United States v. Watford*, 468 F.3d 891, 911 (6th Cir. 2006). But that statutory commitment still leaves discretion with the court to consider the defendant's prior drug felony convictions. Indeed, § 3553(a) *requires* the court to consider the history and characteristics of the defendant and the need to afford adequate deterrence in determining the particular sentence to be imposed. *See* § 3553(a)(1), (2)(B).

The record shows that the court did just that. Though the court opined that McCaulley should have faced the twenty-year mandatory minimum sentence, it did so only after finding McCaulley's thirteen adult convictions demonstrated that "he ha[d] not been deterred by any prior periods of incarceration." R. 151, PageID 1273–76. Further, the court's acknowledgement that it would not question the plea agreement and that the government's decision not to file an information was "between the government and the defendant" belies McCaulley's suggestion that the court substituted the government's discretion for its own. R. 151, PageID 1278. The district court retained discretion to vary, and McCaulley's record warranted its choice.

McCaulley fails to show that the court relied on an impermissible factor in determining his sentence.

### D. Binding Plea Agreement

Finally, McCaulley argues that his 200-month sentence was unreasonable because it exceeded the advisory Guidelines range calculated in his Rule 11(c)(1)(B) plea agreement. Strangely, McCaulley relies on the Guidelines range calculated in his presentence report for his argument. But neither the plea agreement nor the presentence report limited the court in its discretion from determining an appropriate sentence, as McCaulley acknowledged in both. R. 101, PageID 801 ("Such a recommendation or request does not bind the Court."); R. 34, PageID 290 ("Defendant understands that the recommendations of the parties will not be binding upon the Court, that the Court alone will decide the advisory guideline range under the Sentencing Guidelines, whether there is any basis to depart from that range or impose a sentence outside the advisory guideline range, and what sentence to impose."). Thus, McCaulley failed to support his claim of unreasonableness.

### VI.

For these reasons, we VACATE in part Penny, Magadan, and McCaulley's sentences and REMAND for resentencing in accordance with this opinion. We AFFIRM Serna's sentence.